## IN THE MATTER OF ALBERT

Docket No. 59397. Argued October 5, 1977 (Calendar No. 9).—Decided August 30, 1978.

Theodore G. Albert petitioned for reinstatement as a member of the State Bar following the expiration of two suspensions from the practice of law. The State Bar Grievance Board denied the petition. Petitioner appeals. *Held:*

The petition is remanded to the Attorney Discipline Board for a further hearing.

Justice Levin and Chief Justice Kavanagh would remand the case to the newly created Attorney Discipline Board with directions that a new hearing be held on the petition for reinstatement at which no inference regarding Albert's fitness to be reinstated shall be drawn because of his attitude toward or unwillingness to admit or accept responsibility for prior misconduct. On remand the petitioner would be required to establish that he understands the disciplinary rule that a lawyer shall not neglect a legal matter entrusted to him, that if reinstated he will not neglect legal matters entrusted to him, and that, therefore, he can safely be recommended. He might discharge his burden by evidence that he planned to hire a competent secretary who would establish a system for following all cases until concluded, or by showing plans to associate with an established attorney or firm, or that he had studied office management. Upon such a showing the burden should shift to the administrator. The new rules have repealed the requirement that the petitioner show an attitude of remorse so that a disciplined lawyer who persists in maintaining his innocence may nevertheless be reinstated, and full implementation of that policy precludes the Grievance Board from relying on continuing assertions of innocence or refusal to admit wrongdoing as evidence. The substantive criteria are broadly stated, vesting a large measure of unstructured discretion in the

REFERENCES FOR POINTS IN HEADNOTES

[1-6] 7 Am Jur 2d, Attorneys at Law §§ 70-72.
Reinstatement of attorney after disbarment, suspension, or resignation. 70 ALR2d 268.
[3] 7 Am Jur 2d, Attorneys at Law § 69.

hearing panel and Grievance Board with the risk that decision may depend on subjective feelings about a lawyer's personality, beliefs, or character. Combining in one rule the same substantive criteria for reinstating suspended and disbarred lawyers blurs the distinction between suspension and disbarment and causes doubt about the character and quantum of proof appropriate in each case, leading to uneven application of the rule. The vagueness of the present rule leaves unclear what the lawyer seeking reinstatement must show and what the hearing panel must require to justify reinstatement.

The rules should explicitly recognize the implicit assumption of a suspension, that the lawyer will ordinarily be reinstated at the end of the suspension period, and should provide for suspension orders stating conditions for reinstatement. Such orders would facilitate compliance with corrective goals, provide some assurance that there is a correlation between the nature of the earlier misconduct and the showing required for reinstatement, and provide objective criteria for review of a denial of reinstatement.

Justice Williams, joined by Justice Blair Moody, Jr., would remand the matter to the Attorney Discipline Board to be retried without requiring a showing of remorse.

Justice Williams wrote that the obligation to show "genuine remorse" should never have been a requirement for reinstatement. It is unlikely that a person who sincerely feels he was not guilty of misconduct can honestly feel remorse for his action. But there are two opposite reasons why the person may not feel guilty of misconduct: first, that the act was not done, or second, that the act was done but is not understood to be wrong. The second situation raises the question whether the respondent understands and will conduct himself in conformity with the standards of the profession. It is not clear in the instant case whether the respondent made a proper showing that he understands the professional standards relating to his misconduct and will conduct himself in conformity with those standards in the future. An honest belief by the respondent that he did not do the unprofessional acts charged should not he held against him if there is reason to differ as to whether the acts were or were not done, but his failure to understand that properly charged unprofessional acts are indeed unprofessional may be considered as an element militating against reinstatement.

Justice Coleman, joined by Justices Fitzgerald and Ryan, dissented. The burden was on the petitioner to establish by clear and convincing evidence that he met the requirements for

reinstatement set out in the State Bar Rules. The board's findings that he had not satisfied the requirements that he have an attitude of remorse, that he have a proper understanding of the standards of the profession, and that he can safely be recommended as a laywer have proper evidentiary support in the record presented to the Court. Even if the lack of remorse is eliminated from consideration, the record of proceedings and the petitioner's oral argument before the Court are persuasive that the State Bar Grievance Board had ample reason for its decision.

OPINION BY LEVIN, J.

1. ATTORNEY AND CLIENT — DISCIPLINARY PROCEEDINGS — REINSTATE-
   MENT — EVIDENCE — REMORSE.

   *An attitude of remorse and willingness to accept responsibility for prior professional misconduct may tend to show that a suspended or disbarred lawyer understands and will conform to the profession's standards and can be safely be recommended to practice law; however, the absence of such an attitude is not evidence of the converse (State Bar Rule 15, § 7).*

2. ATTORNEY AND CLIENT — DISCIPLINARY PROCEEDINGS — REINSTATE-
   MENT — EVIDENCE — REMORSE.

   *The remorse requirement for reinstatement of a suspended or disbarred lawyer has been repealed so that a disciplined lawyer who persists in maintaining his innocence may nevertheless be reinstated; full implementation of that policy precludes the State Bar Grievance Board from relying on continuing assertions of innocence or refusal to admit wrongdoing as evidence that a lawyer seeking reinstatement does not have proper understanding of the standards, will not conduct himself in conformity with them or cannot be safely recommended to practice law (State Bar Rule 15, § 7; GCR 1963, 972).*

3. ATTORNEY AND CLIENT — DISCIPLINARY PROCEEDINGS — SUSPENSION
   — DISBARMENT — CONDITIONS OF REINSTATEMENT.

   *The State Bar Grievance Board, in every case in which a suspension of more than 120 days is ordered, should be required by the court rules to identify the specific problem, state whether corrective action is required and, if so, the specific conditions of the suspension deemed to serve that goal; upon showing compliance with those conditions the lawyer should be reinstated.*

OPINION BY WILLIAMS, J.

4. ATTORNEY AND CLIENT — DISCIPLINARY PROCEEDINGS — REINSTATE-
   MENT.

   *The obligation to show "genuine remorse" should never have*

*been a requirement for reinstatement to the State Bar; it is unlikely that a person who sincerely feels he was not guilty of misconduct can honestly feel remorse for the action (State Bar Rule 15, § 7).*

5. ATTORNEY AND CLIENT — DISCIPLINARY PROCEEDINGS — REINSTATE-
MENT.

*Failure of a petitioner for reinstatement to the State Bar to understand that properly charged unprofessional acts are indeed unprofessional certainly can be considered as an element militating against reinstatement because it indicates that the petitioner may not meet the requirement for reinstatement that he understands and will conduct himself in conformity with the standards of the profession (State Bar Rule 15, § 7).*

DISSENTING OPINION BY COLEMAN J.

6. ATTORNEY AND CLIENT — DISCIPLINARY PROCEEDINGS — REINSTATE-
MENT.

*A new hearing on a petition for reinstatement to the State Bar under amended rules which do not require the petitioner to show remorse for his misconduct is not necessary to a fair decision in a case where the record of proceedings under the former rules and the petitioner's oral argument before the Supreme Court show ample reason other than lack of remorse for a decision to deny the reinstatement (State Bar Rule 15, § 7; GCR 1963, 972).*

Theodore G. Albert, *in propria persona.*

*Eugene N. LaBelle,* Associate Counsel to the State Bar Grievance Administrator.

LEVIN, J. Theodore G. Albert appeals an order of the State Bar Grievance Board denying his petition for reinstatement.

The Grievance Board found that Albert failed to establish that he met the requirements for reinstatement set forth in clauses (e), (g) and (h) of State Bar Rule 15, § 7.

That rule provides that when a license to prac-

tice law has been revoked or suspended for in excess of 120 days, a lawyer seeking reinstatement is required to establish by "clear and convincing evidence" that

(e) His attitude towards his prior misconduct is one of genuine remorse;

(g) He understands and will conduct himself in conformity with the profession's standards;

(h) He can safely be recommended to practice law.[1]

New rules concerning bar grievances and disci-

[1] "Eligibility for Reinstatement. Upon expiration of any term of suspension not in excess of 120 days, such person so disciplined shall be automatically reinstated upon his filing with the clerk of the Supreme Court and the State Grievance Administrator an affidavit showing that he has fully complied with all the terms and conditions of the order of suspension. Any false statement contained in such affidavit shall be ground for disbarment.

"No person whose license to practice law has been revoked or suspended for a term in excess of 120 days shall be eligible for reinstatement as a member of the bar of this State unless he has petitioned for reinstatement in conformity with Rule 16.20 of the Procedural and Administrative Rules of the State Bar Grievance Board and has established by clear and convincing evidence that:

"(a) He desires in good faith to be restored to the privilege to practice law in this State;

"(b) The term of suspension prescribed in the order of suspension has elapsed or 5 years have elapsed since revocation of the license;

"(c) He has not practiced law contrary to the requirement of his suspension or revocation and has not attempted to do so since he was disciplined;

"(d) He has complied fully with the terms of the order for discipline;

"(e) His attitude towards the misconduct for which he was disciplined is one of genuine remorse;

"(f) His conduct since the discipline has been exemplary and above reproach;

"(g) He has a proper understanding of and attitude towards the standards that are imposed upon members of the bar and that he will conduct himself in conformity with such standards;

"(h) He can safely be recommended to the legal profession, the courts and the public as a person fit to be consulted by others and to represent them and otherwise to act in matters of trust and confidence, and in general to aid in the administration of justice as a member of the bar and as an officer of the courts." State Bar Rule 15, § 7.

pline have been promulgated effective October 1, 1978. The genuine remorse requirement was eliminated, while clauses (g) and (h) were retained.[2]

Albert's attitude toward the misconduct for which he was disciplined was the primary focus of the reinstatement hearing. The hearing panel found that his "general frame of mind and attitude" "requires" the conclusion that he does not understand and will not conduct himself in conformity with the profession's standards and cannot safely be recommended, and said:

> "Repeatedly, during the course of the hearing, the petitioner failed to accept responsibility for his actions, which were the subject of discipline, and attempted to explain or to place the blame for such occurrences upon misunderstandings or actions by others, most of which could not be accepted by the hearing panel, either as fact or in mitigation."

The Grievance Board affirmed those findings and conclusions.

While an attitude of remorse and willingness to accept responsibility for the prior misconduct may tend to show that a suspended or disbarred lawyer understands and will conform to the profession's standards and can safely be recommended, the

---

[2] The new rules are part of the General Court Rules, GCR 1963, 950 *et seq.* On the effective date, October 1, 1978, State Bar Rules 15 and 16 are repealed. State Bar Rule 15, § 7, Eligibility for Reinstatement, will be GCR 1963, 972. Clauses (g) and (h) of the former rule are retained in the new rule without substantive changes, GCR 1963, 972.2(6) and (7).

The new rules add the following requirements:

"(8) for a suspension of 3 years or more, he has been recertified by the Board of Law Examiners; and

"(9) he has reimbursed or has agreed to reimburse the Client Security Fund any money paid from the fund as a result of his conduct. Failure to fully reimburse as agreed is ground for revocation of a reinstatement." GCR 1963, 972.2(8) and (9).

absence of such an attitude is not evidence of the converse.

This Court repealed the remorse requirement so that a disciplined lawyer who persists in maintaining his innocence may nevertheless be reinstated.[3] Full implementation of that policy precludes the Grievance Board from relying on continuing assertions of innocence or refusal to admit wrongdoing as evidence that a lawyer seeking reinstatement does not have a proper understanding of the standards, will not conduct himself in conformity with them or cannot safely be recommended.

We would remand this case to the newly created Attorney Discipline Board with directions that a new hearing be held on Albert's petition at which no inference regarding his fitness to be reinstated shall be drawn because of his attitude toward or unwillingness to admit or accept responsibility for the prior misconduct.[4]

## I

While Albert need not admit misconduct or "accept responsibility" as a precondition to rein-

[3] This Court was persuaded by the reasoning of the Supreme Judicial Court of Massachusetts:

"[A] rule requiring admission of guilt and repentance creates a cruel quandary: [a petitioner] may stand mute and lose his opportunity; or he may cast aside his hard retained scruples and, paradoxically, commit what he regards as perjury to prove his worthiness to practice law. * * * Honest men would suffer permanent disbarment under such a rule. Others, less sure of their moral positions, would be tempted to commit perjury by admitting to a nonexistent offense (or to an offense they believe is nonexistent) to secure reinstatment. So regarded, this rule, intended to maintain the integrity of the bar, would encourage corruption in these latter petitioners for reinstatement and, again paradoxically, might permit reinstatement of those least fit to serve." *In the Matter of Alger Hiss,* 368 Mass 447; 333 NE2d 429, 437 (1975).

See, also, *In re Barton,* 273 Md 377; 329 A2d 102 (1974).

[4] Such hearing should be held as soon after the October 1, 1978 effective date of the new rules as can conveniently be arranged.

statement, the rule in effect requires that he demonstrate that he will not repeat the conduct for which he was disciplined.[5]

Albert was suspended for one year on evidence that he had "accepted retainers and agreed to perform services * * *, but did not render the agreed services". *State Bar Grievance Administrator v Albert*, 390 Mich 234, 236; 212 NW2d 17 (1973). A consecutive one-year suspension was ordered for similar misconduct and for failing to respond to the request for investigation. During the second suspension Albert was reprimanded for a similar lapse, failing to file a timely claim of appeal.

On remand Albert would be required to establish that he understands DR 6-101(A)(3), "a lawyer shall not neglect a legal matter entrusted to him", that if reinstated he will not neglect legal matters entrusted to him and that, therefore, he can safely be recommended.[6]

## A

The rule took its present form in 1970.[7] Prior

[5] While the primary cause for prior discipline can often, as here, be identified from the history of discipline, unless the disciplinary order identifies the specific problem and states the corrective action, if any, required for reinstatement, there may be doubt, with an attendant risk of uneven enforcement.

[6] At a reinstatement hearing the lawyer may be asked hypothetical questions based on the prior misconduct to determine whether he understands the profession's standards. Such questions should be carefully phrased to preserve the lawyer's right to seek reinstatement without acknowledgement that the conduct for which he was disciplined was misconduct.

[7] See 383 Mich xlii, adopted Rule 14 (now 15) of the State Bar Rules. The rule was adopted December 15, 1969, effective March 1, 1970. As originally adopted the rule applied to any person whose license to practice had been revoked or suspended. By amendment adopted and effective November 12, 1971 persons suspended for 120 days or less are automatically reinstated upon filing with the Clerk of the Supreme Court and the Grievance Administrator an affidavit

rules did not state the substantive showing required for reinstatement, prescribing only the procedure.[8] Under the former procedure, the reinstatement hearing was to be given focus by the chairman of the grievance committee who was required to give the lawyer seeking reinstatement notice in advance of the hearing of "the nature of the proofs required for reinstatement".[9]

The substantive criteria in the present rule appear to have been adopted in response to the concern that *disbarred* lawyers were too readily reinstated by the courts; an ABA committee recommended "that reinstatement shall be granted only on the affirmative showing by the applicant

showing full compliance with the terms and conditions of the order of suspension. 386 Mich lii.

[8] See, Honigman, Michigan Court Rules Annotated (1949), Appendix 6 (stating the Supreme Court rules concerning the State Bar of Michigan as amended and approved April 17, 1947), p 823; Honigman & Hawkins, Michigan Court Rules (1969), Rules Concerning the State Bar of Michigan, pp 680-686.

The former rule did provide:

"No person shall be recommended for reinstatement unless his eligibility for reinstatement, considered in the light of the misconduct for which he was disciplined, has been established by evidence that is clear and convincing." Former State Bar Rule 15, § 21.

[9] "It shall be the duty of the chairman of the grievance committee to fix the time and place of the formal hearing, and to cause written notice thereof to be served upon the petitioner, or his counsel of record, and upon the State Bar of Michigan. Such notice shall contain a brief statement of the nature and date of the discipline, the nature of the misconduct for which the petitioner was disciplined, *and the nature of the proofs required for reinstatement.* Such notice shall be published in the official publication of the State Bar of Michigan at least once prior to the date fixed for the formal hearing." Former State Bar Rule 15, § 20 (emphasis supplied).

The present rule provides:

"The Administrator shall prepare a notice containing a brief statement of the nature and date of the discipline, the misconduct for which the petitioner was disciplined and the matters required to be proved for reinstatement, and the Administrator shall publish the notice in the State Bar Journal at least 30 days prior to the date fixed for the hearing." State Bar Grievance Board Procedural Rule 16.21.

that he possesses the requisite qualities of character and learning".[10]

Those substantive criteria, which have been recently re-adopted, are broadly stated, vesting a large measure of unstructured discretion in the hearing panel and Grievance Board with the risk that decision may turn on subjective feelings about a lawyer's personality, beliefs or character.

Combining in one rule the same substantive criteria for reinstating suspended and disbarred lawyers blurs the distinction between suspension and disbarment[11] and causes doubt about the character and quantum of proof appropriate in each case, leading to uneven application of the rule.

The practice has varied. Usually, the disciplined lawyer admits his prior misconduct, undertakes not to repeat it, and no evidence of corrective action is proffered. The lawyer may testify that he has used the time made available by the suspension to read the advance sheets or attend continuing legal education seminars. Members of the bar are sometimes called to express an opinion regarding the lawyer's professional qualifications. Friends, neighbors and business associates may testify to general good citizenship and character.

The lawyer and his counsel often know in advance that the administrator will not seriously oppose reinstatement and the testimony is, if not *pro forma,* perfunctory.[12] In such a case, the pri-

---

[10] ABA Special Committee on Evaluation of Disciplinary Enforcement, Problems and Recommendations in Disciplinary Enforcement (1970), pp 150-151.

[11] Webster's Seventh New Collegiate Dictionary (1965) defines "suspension" as the "temporary removal from office or privileges." See *State ex rel Florida Bar v Evans,* 109 So 2d 881, 882 (Fla, 1959); *State ex rel Nebraska State Bar Association v Butterfield,* 172 Neb 645, 648; 111 NW2d 543 (1961).

[12] As a result of the vagueness of the present rule, much of what occurs at most reinstatement hearings is not a good use of the time of

mary concern of the hearing panel is whether the lawyer has complied with the terms of the order for discipline and, in particular, whether he has practiced law contrary to the disciplinary order.[13] (See State Bar Rule 15, § 7, subds [c] and [d], fn 1.)

Where, however, as here, the administrator actively opposes reinstatement, the vagueness of the present rule leaves unclear what the lawyer seeking reinstatement must show and what the hearing panel must require to justify reinstatement.

The reinstatement hearing in the instant case demonstrates the difficulty that may be encountered in applying the vague subjective criteria of the rule. A hearing of nearly ten hours was held on Albert's petition. He testified at length about his personal history, political activity and work as a lawyer. A substantial portion of his testimony concerned the conduct for which he had been disciplined and his explanation of the circumstances surrounding those events.[14]

The hearing lacked focus and objective criteria

_____

the hearing panel, the administrator or counsel for the parties. Public confidence in the disciplinary system is not enhanced by idle ceremony of which few, if any, take note.

[13] The Grievance Administrator's brief adverts to evidence that a sign stating "Attorney at Law" had been posted in Albert's window and that he was listed as an attorney in the yellow pages of area phone books. Both advertisements, explained as accidental by Albert, were withdrawn by 1976. There was no showing that Albert practiced law during the period of his suspension. The hearing panel made no finding that he had practiced law and did not rely on such evidence in its decision.

[14] State Bar Grievance Board Procedural Rule 16.21 provides:

"The Administrator shall investigate the eligibility of the petitioner for reinstatement in advance of any hearings thereon, and report his findings in writing to the Hearing Panel, and shall serve a copy on the petitioner. The report shall summarize the facts of all previous misconduct and the available evidence bearing upon the eligibility of the petitioner for reinstatement."

The investigative report in the instant case was not referred to in the findings of the panel. Much of Albert's testimony was an attempt to anticipate and answer the statements in that report.

Opinion by Levin, J.

for intelligent review. The record demonstrates mainly that Albert maintained that he did not know what he needed to prove to be reinstated.

A suspended lawyer petitioning for reinstatement should not feel compelled to present an exhaustive account of his life and character in the hope that he will, at some point, stumble on the essence of the problem as perceived by the panel and convince it that he is basically a good person who should be permitted to practice law.

## B

Because reinstatement is not automatic, any suspension for more than 120 days is an indefinite suspension.[15] The policy justifying indefinite suspension has been stated by the Washington Supreme Court:

" 'It imposes upon the offending lawyer the responsibility of restoring the confidence of the public as well as the respect of his colleagues in the profession. In other words, the opportunity for reinstatement should stand as a goal to the disciplined lawyer to re-establish himself in the profession.

" 'A mere suspension for a fixed period of time, with the assurance of automatic reinstatement at the end of the prescribed period, does not impose upon the lawyer the responsibility of taking affirmative action during the period of suspension in order to gain readmittance at the end of the period. In other words, readmission being automatic, no burden is placed upon the lawyer to justify his re-entrance by his own conduct. *State ex rel Florida Bar v Ruskin,* 126 So 2d 142, 144 (Fla,

---

[15] Albert, although suspended for two years, has been effectively barred from practice since the first one-year suspension became effective on February 27, 1974. Moreover, Albert's "suspension" may prove in effect to be permanent. Under State Bar Rule 15, § 3(2), an attorney suspended for a period greater than 120 days is suspended indefinitely. In February, 1979 the period of Albert's suspension will have been as long as the minimum period of disbarment.

1961).' " *In re Nelson,* 87 Wash 2d 77, 83; 549 P2d 21
(1976).

Nevertheless, the implicit assumption of a sus-
pension, whether or not indefinite, is that the
disciplined lawyer will ordinarily be reinstated at
the end of the suspension period. The rules should
explicitly recognize that premise, and should pro-
vide:

(i) If the suspension is purely punitive, the law-
yer shall be reinstated upon an appropriate show-
ing that he has complied with the disciplinary
order, unless further disqualifying cause is shown;
and

(ii) If a purpose of the suspension is corrective,
the conditions of reinstatement shall be made part
of the order of suspension so that the lawyer can
conform his behavior and at the hearing can show
that he has taken the requisite corrective steps.

Suspension orders stating conditions for rein-
statement would facilitate compliance with correc-
tive goals and provide some assurance that there
is a correlation between the nature of the earlier
misconduct and the showing required for reinstate-
ment. They would further provide both an objec-
tive basis for determining whether correctional
goals have been achieved and objective criteria for
review of a denial of reinstatement. This would
serve not only the interest of the disciplined law-
yer in expeditious reinstatement, but also the
public interest in an effective disciplinary process.

The Washington Supreme Court has said that
an order of indefinite suspension should "fix the
time when and the conditions upon which the
privilege may be exercised in the future". *In re
Nelson, supra.* The conditions imposed in that case
were that the lawyer show substantial recovery

from his emotional disturbances, pay sums owing to clients or submit a payment plan, and pay costs of the disciplinary proceedings.

The conditions imposed in an order of indefinite suspension may be fashioned to fit the particular problems identified in the grievance proceeding. In *Florida Bar v MacKenzie*, 319 So 2d 9 (Fla, 1975), the conditions for reinstatement were that the attorney account for the proceeds of a sale to his client, pay interest for the period of wrongful use of her funds, and establish a system of accounting to be approved by the State Bar. The suspension order in *In re Satterlee*, 296 Minn 515; 207 NW2d 362 (1973), conditioned reinstatement on a showing that the attorney had made a settlement satisfactory to the tax authorities, refunded money to clients, and had controlled his drinking problem. In *Segretti v State Bar*, 15 Cal 3d 878; 126 Cal Rptr 793; 544 P2d 929 (1976), the court conditioned reinstatement on passing the state's professional responsibility examination.[16]

This Court recently affirmed an order of the State Bar Grievance Board suspending a lawyer from the practice of law for 60 days and until the closing of a probate estate of which he was the administrator. *State Bar Grievance Administrator v Ruebelman*, 402 Mich 501; 265 NW2d 161 (1978).

Explicitly conditioned orders of suspension advance the goals of rehabilitation and protection of the public. The attorney is given specific notice of the problem to be corrected and the course of action to be taken. When a petition for reinstatement is filed, the focus of the proceedings is the problem identified in the conditional suspension order and the progress made by the attorney toward rehabilitation. The suspended lawyer

---

[16] Similarly, see GCR 1963, 972.2(8), quoted in fn 2, *supra*.

should not be put in the position of a supplicant searching for the formula which will enable him to return to practice.[17]

## C

Inattentiveness and neglect are the most frequent causes for lawyer discipline.

It is unclear what would constitute "clear and convincing evidence" that a lawyer who has previously neglected legal matters entrusted to him will not do so in the future.

In a comparatively small number of cases it may genuinely appear that a personal crisis in the lawyer's life, not usually recurrent, e.g., his own or a family illness, marital discord, explains the previously charged acts of neglect. In other cases it may appear that neglect is characteristic of the lawyer and his working style.

The practice of accepting statements of contrition and promises not to err in the future as sufficient evidence that neglectful conduct will not be repeated if the lawyer is reinstated suggests that a minimal showing is generally deemed "clear and convincing evidence" when the lawyer has been suspended rather than disbarred for neglect.

In suspending Albert, rather than disbarring him the Grievance Board by implication concluded that his prior misconduct did not warrant permanent revocation of his license to practice law and that he was capable of conforming his conduct to the standards of the profession. The quantum of

[17] Stating the conditions for reinstatement at the time of suspension is consistent with the rationale of *State Bar Grievance Administrator v Gillette*, 393 Mich 26; 222 NW2d 513 (1974); 394 Mich 1; 228 NW2d 220 (1975), requiring the State Bar Grievance Board to give reasons for increasing the discipline ordered by a hearing panel: "Requiring such specificity provides requisite guidance as to the administration of code provisions and discourages decisional caprice." *Id.*, 394 Mich, p 3.

evidence required of Albert regarding his future
conduct should reflect those implicit conclusions of
the Grievance Board.

Albert might discharge his burden of showing
that he will not neglect his clients' affairs in the
future by evidence that he planned to hire a
competent secretary who would establish a system
for following all cases until concluded. Such a
system might cover some or all of the following:
office plans, record keeping, procedures for initial
meetings with clients, follow-up communications
with clients, a tickler system for deadlines, and a
procedure for timely withdrawing from employ-
ment when the work cannot be completed. If Al-
bert asserts that he cannot afford to hire a secre-
tary, he might make such a showing in another
manner, for example, by plans to associate with an
established attorney or firm. Or he might show
that he had studied office management. Upon such
a showing, the burden of demonstrating that he
would, if reinstated, again neglect his clients' mat-
ters and that he cannot safely be reinstated should
shift to the administrator.

## II

We would amend the rules regarding reinstate-
ment to *require* hearing panels and the Grievance
Board, in every case in which a suspension of more
than 120 days is ordered, to identify the specific
problem, state whether corrective action is re-
quired and, if so, the specific conditions of the
suspension deemed to serve that goal; upon show-
ing compliance with those conditions the lawyer
should be reinstated.[18]

---

[18] *Cf.* Integration Rule of the Florida Bar, Art 11, Rules of Disci-
pline, Rules 11.10(4) and 11.10(3).

Albert was "assessed the sum of $1254.08 for the costs and charges of the transcript and attendance of the stenographer and meal expenses of the Hearing Panel, plus cost of Investigative Report". Because the lack of focus of the reinstatement hearing was not chargeable to Albert alone, we would not require payment of costs as a prerequisite to the conduct of the hearing on remand and would defer assessment of costs until the conclusion of the hearing with a view to limiting the total amount assessed.[19]

Remanded to the newly created Attorney Discipline Board for a further hearing.

Kavanagh, C.J., concurred with Levin, J.

Williams, J. Suspended attorney Theodore G. Albert failed to persuade the State Bar Grievance Board that he was qualified for reinstatement to the bar. A measurable part of the board's reasoning for denying reinstatement had to do with his failure to show "genuine remorse" and "to accept responsibility for his actions".

In my opinion the obligation to show "genuine remorse" should never have been a requirement under this Court's rules. It is unlikely that a person who sincerely feels he or she was not guilty of misconduct can honestly feel remorse for the action. Of course, this requirement for reinstatement has now been deleted by action of this Court.

A person who truly feels he or she was not guilty of misconduct may do so for two polar reasons. First, the person does not feel he or she actually did an act understood to be wrong. Sec-

---

[19] The rule requires that the order of reinstatement direct the lawyer to reimburse the State Bar for expenses allocable to the hearing. State Bar Grievance Board Procedural Rule 16.32

ond, the person does not understand the act done was a wrongful act.

In the first instance we are concerned largely with the "genuine remorse" subsection (e) situation, which is now no longer a requirement under the present rules. However, the second situation clearly raises a subsection (g) question. "He [understands] * * * and will conduct himself in conformity with [the profession's] standards."

While the new court rules drop the "remorse" criterion, it certainly is pertinent that respondent understand whether what he did was wrong, partially to be sure he will properly conduct himself in the future.

The *Albert* case is so involved with the remorse criterion, both on respondent Albert's part and the board's part, that it is not clear whether respondent Albert did or did not make a proper showing that he understands what is right and what is wrong about his alleged misconduct. Consequently, this uncertainty makes it difficult to properly prognosticate his future conduct.

Therefore, I would remand this matter to the newly-created Attorney Discipline Board to be retried without requiring a remorse criterion. An honest belief by respondent that he did not do the charged unprofessional acts should not be held against him in the event there is reason to differ as to whether the acts were or were not done. But his failure to understand that properly charged unprofessional acts are indeed unprofessional certainly can be considered as an element militating against reinstatement on the basis of subsection (g).

BLAIR MOODY, JR., J., concurred with WILLIAMS, J.

COLEMAN, J. *(dissenting).* Petitioner, twice suspended from the practice of law, appeals from the February 1, 1977 order of the State Bar Grievance Board denying his petition for reinstatement as a member of the State Bar of Michigan.

On February 27, 1976, after the expiration of the terms of suspension, Mr. Albert petitioned for reinstatement as an attorney in good standing. A proceeding lasting approximately ten hours was held before Tenth Congressional District Hearing Panel No. 1 on September 15, 1976. Petitioner testified in his own behalf and called as his one witness the investigator for the State Bar Grievance Board. On October 25, 1976, Hearing Panel No. 1 filed its report.

The hearing panel's order denied the petition for reinstatement. Mr. Albert petitioned the grievance board for a review of the denial order. A hearing was held before the State Bar Grievance Board on January 21, 1977. On February 3, 1977 the grievance board affirmed the hearing panel's denial of the petition for reinstatement.

In reinstatement proceedings following a revocation or suspension of a license to practice law for a term in excess of 120 days, as here, the burden is on the petitioner to establish by "clear and convincing evidence" that:

"(a) He desires in good faith to be restored to the privilege to practice law in this State;

"(b) The term of suspension prescribed in the order of suspension has elapsed or 5 years have elapsed since revocation of the license;

"(c) He has not practiced law contrary to the requirement of his suspension or revocation and has not attempted to do so since he was disciplined;

"(d) He has complied fully with the terms of the order for discipline;

"(e) His attitude towards the misconduct for which he was disciplined is one of genuine remorse;

"(f) His conduct since the discipline has been exemplary and above reproach;

"(g) He has a proper understanding of and attitude towards the standards that are imposed upon members of the bar and that he will conduct himself in conformity with such standards;

"(h) He can safely be recommended to the legal profession, the courts and the public as a person fit to be consulted by others and to represent them and otherwise to act in matters of trust and confidence, and in general to aid in the administration of justice as a member of the bar and as an officer of the courts."[1]

The hearing panel found that petitioner did not satisfy the requirements under subsections (e), (g), and (h). Our examination of the transcripts and briefs discloses not only that the petitioner failed to meet his burden of proof, but also that the board's findings have proper evidentiary support in this record presented to us at this time.

Justice Levin's opinion provides an informative analysis of the thinking which led to our amending State Bar Rule 15, § 7. The amendment took place subsequent to our hearing respondent's *in propria persona* appeal from a denial of reinstatement of his license to practice law. However, it is our opinion that a new hearing based on the newly amended rule is not necessary to a fair decision in this case.

Even if we eliminate consideration of Mr. Albert's lack of remorse, the record of proceedings before the hearing panel and Mr. Albert's oral argument before this Court persuade us that the bar grievance board had ample reason for its decision. We find no cause to remand and would affirm.

Fitzgerald and Ryan, JJ., concurred with Coleman, J.

---

[1] State Bar Rule 15, § 7.