## IN THE MATTER OF FREEDMAN

Docket No. 60866. Argued October 4, 1978 (Calendar No. 15).—Decided May 1, 1979.

Burton R. Freedman petitioned for reinstatement as a member of the State Bar following a suspension for two years from the practice of law. The State Bar Grievance Board denied the petition. Petitioner appeals. *Held:*

1. A person petitioning the State Bar for reinstatement assumes the burden of establishing his eligibility by "clear and convincing evidence". A finding against the petitioner by the State Bar Grievance Board or its hearing panel must be sustained by a preponderance of the evidence. The function of the Supreme Court in bar grievance matters is to determine whether the findings of the State Bar Grievance Board have proper evidentiary support on the whole record. The Court's concern is the protection of the public, not the punishment of the attorney under investigation.

2. Review of the record in this case shows there is proper evidentiary support for the denial of reinstatement. One significant point against the petitioner was his failure to attempt payment of a "committed" fine incident to his conviction in Federal court, one which required payment prior to release from prison. The petitioner was released from prison without payment based upon his affidavit of indigency. Rather than squarely face the responsibility which was directly connected to his suspension, petitioner openly admitted avoiding the issue altogether until the day of the hearing on his petition two years later. Given the level of the petitioner's annual income, about $23,000 in 1976, there is no reason shown for failing to

REFERENCES FOR POINTS IN HEADNOTES

[1, 5, 7-9] 7 Am Jur 2d, Attorneys at Law § 72.
[1-9] Reinstatement of attorney after disbarment, suspension, or resignation. 70 ALR2d 240.
[2] 7 Am Jur 2d, Attorneys at Law § 70.
[3] 4 Am Jur 2d, Appeal and Error § 171.
    7 Am Jur 2d, Attorneys at Law § 71.
[4] 7 Am Jur 2d, Attorneys at Law § 50.
[6] 7 Am Jur 2d, Attorneys at Law § 71.

attempt payment of the fine, for example, by installments. The evidence presented was sufficient for the denial of reinstatement.

3. Less persuasive, but significant, is the fact that the petitioner failed to remove his listing as an attorney from the telephone directory or Lawyers Handy Book. Although the evidence of the reasons for his failure is not entirely clear, the listings remain as a potential improper representation to the profession and the public. Neither was the petitioner entirely accurate in his statement that he "practiced law" for some time before his suspension when he was not engaged in an active practice of any kind, which leaves room for an incorrect impression of his activity during that time.

Affirmed.

Justice Levin, joined by Justice Kavanagh, dissented:

1. The petitioner was not obliged to show that he was currently qualified by training and experience to practice law. His professional competence was not implicated by the suspension or grounds for suspension, his conviction of making a false statement to the Department of Housing and Urban Development, a felony. He was not disciplined for malpractice. He was not obliged to negative repetition of conduct for which he had not been disciplined. The new rule concerning recertification by the Board of Law Examiners of attorneys suspended for three years or more does not apply to the petitioner.

2. The statement which the petitioner made that he practiced law in Detroit until his suspension, read in light of the further statement that he was in the real estate business as an investor and his testimony that he regarded some features of his real estate activities as constituting the practice of law, does not support a finding that he spoke falsely, or misled or sought to mislead the State Bar investigator to whom he made the statement. Some members of the bar who cease actively to practice law maintain their "active" status by paying the bar dues. They engage, in other businesses, in activities which laymen hire lawyers to perform and for which lawyers bill clients for professional services rendered. Although some such activities may be performed by laymen without becoming involved in the unauthorized practice of law, lawyers so often are called upon to provide such services and do so as lawyers that it cannot be said that a lawyer is speaking falsely or misleadingly when he asserts that when he engages in such activities he is practicing law.

3. While the petitioner strayed outside the law in his real estate business, it does not follow that because he returned to

that business he will again act unprofessionally. There is no reason to suppose that he will again engage in unprofessional activity. The Grievance Board may not, merely because he returned to the real estate business, in effect transform a two-year suspension into permanent disbarment.

4. The petitioner explained that he had not paid the fine or the civil judgment in connection with his Federal offense because he did not have sufficient money. There is no evidence that he had the means but, nevertheless, did not pay. Shortly after the hearing on this petition and before decision, he satisfied the civil judgment and made arrangements satisfactory to the United States Attorney's office for payment of the fine and made a partial payment. The government's willingness to release the petitioner from prison without payment of the fine, its failure to seek payment during the "some two years" after his release, and the relatively small amount and extended payments which it was willing to accept, support his testimony that he did not have the means to pay the fine earlier. The petitioner may well have had obligations to others who were pressing him; it does not appear that he had the means to make earlier payment. The petitioner gave his mother a mortgage on his home to secure indebtedness to her. The indebtedness appears to have been genuine. The apparent assumption of the Grievance Board that the lien was given to secure the equity in the home from the claims of creditors rather than to secure his mother is not supported. The petitioner's action in securing his indebtedness to his mother with a mortgage was neither dishonorable nor unprofessional. Nor can he be denied reinstatement because he was driving an expensive automobile that had been provided for him.

5. The rule requires that a lawyer seeking reinstatement carry the burden of showing that he can be "safely recommended", but that burden is discharged when the suspended lawyer addresses the concerns which gave rise to his discipline and any other substantial claim of misconduct which may surface before he is reinstated. The petitioner carried that burden. He should be reinstated to the practice of law upon payment to the administrator of costs assessed by the hearing panel.

OPINION OF THE COURT

1. ATTORNEY AND CLIENT — GRIEVANCE PROCEEDINGS — PETITION FOR REINSTATEMENT.

A petitioner for reinstatement to the State Bar assumes the

burden of establishing his eligibility by "clear and convincing evidence" (State Bar Rule 15, § 7; GCR 1963, 972).

2. ATTORNEY AND CLIENT — GRIEVANCE PROCEEDINGS — PETITION FOR REINSTATEMENT.

A finding against a petitioner for reinstatement to the State Bar by the State Bar Grievance Board or its hearing panel must be sustained by a preponderance of the evidence (State Bar Rule 15, § 7; GCR 1963, 972).

3. ATTORNEY AND CLIENT — GRIEVANCE PROCEEDINGS — APPEAL AND ERROR.

The function of the Supreme Court in grievance matters is to determine whether the State Bar Grievance Board's findings have proper evidentiary support on the whole record; the concern of the Court is the protection of the public, not the punishment of the attorney under investigation.

4. ATTORNEY AND CLIENT — GRIEVANCE PROCEEDINGS — PETITION FOR REINSTATEMENT.

Denial of a petition for reinstatement to the State Bar had proper evidentiary support where the petitioner had been suspended from the practice of law for conviction of a Federal crime, he was released from prison without payment of a $5,000 fine based on his affidavit of indigency, he admitted avoiding the issue until the day of the hearing on his petition for reinstatement two years later, and he showed no reason for failing to attempt payment in installments, which he finally agreed to, from his income of about $23,000 the first year after his release from prison.

DISSENTING OPINION BY LEVIN, J.

5. ATTORNEY AND CLIENT — DISCIPLINARY PROCEEDINGS — REINSTATEMENT — EVIDENCE — PROFESSIONAL COMPETENCE.

*A petitioner for reinstatement to the State Bar was not obliged to show that he was currently qualified by training and experience to practice law where his professional competence was not implicated by the suspension or grounds for suspension, he was not disciplined for malpractice, and the new rule concerning recertification of certain suspended attorneys by the Board of Law Examiners does not apply to the petitioner; he was not obliged to negative repetition of conduct for which he had not been disciplined (GCR 1963, 972).*

6. ATTORNEY AND CLIENT — DISCIPLINARY PROCEEDINGS — REINSTATE-
   MENT — PRACTICE OF LAW — WORDS AND PHRASES.·

   *A statement which a petitioner for reinstatement to the State
   Bar made that he "practiced law in Detroit" until his suspen-
   sion, read in light of the further statement that he was in the
   real estate business as an investor and his testimony that he
   regarded some features of his real estate activities as constitut-
   ing the practice of law, does not support a finding that he spoke
   falsely, or misled or sought to mislead the State Bar investiga-
   tor to whom he made the statement.*

7. ATTORNEY AND CLIENT — DISCIPLINARY PROCEEDINGS — REINSTATE-
   MENT.

   *The State Bar Grievance Board may not, merely because a
   petitioner for reinstatement to the State Bar returned to the
   real estate business in which he had violated the criminal law,
   in effect transform a two-year suspension into permanent dis-
   barment where there is no reason to suppose that he will again
   engage in unprofessional activity.*

8. ATTORNEY AND CLIENT — DISCIPLINARY PROCEEDINGS — REINSTATE-
   MENT.

   *A petition for reinstatement to the State Bar may not be denied
   for failure to pay the criminal fine or civil judgment arising out
   of the Federal matter for which the petitioner was suspended
   where there is no evidence that he had the means but, never-
   theless, did not pay; he later satisfied the civil judgment and
   made arrangements satisfactory to the United States Attor-
   ney's office for payment of the fine and made a partial pay-
   ment; and the petitioner's action in securing his indebtedness
   to his mother with a mortgage on his home was neither
   dishonorable nor unprofessional; nor can he be denied rein-
   statement because he was driving an expensive car that had
   been provided for him.*

9. ATTORNEY AND CLIENT — DISCIPLINARY PROCEEDINGS — REINSTATE-
   MENT — BURDEN OF PROOF.  ·

   *The rule on eligibility for reinstatement to the State Bar requires
   that a petitioner seeking reinstatement carry the burden of
   showing that he can be "safely recommended", but that burden
   is discharged when the suspended lawyer addresses the con-
   cerns which gave rise to his discipline and any other substan-
   tial claim of misconduct which may surface before he is rein-
   stated (GCR 1963, 972).*

*Lawrence S. Cohen* for petitioner Freedman.

*Louis Rosenzweig,* Counsel to State Bar Grievance Administrator.

BLAIR MOODY, JR., J. This appeal follows an order of the State Bar Grievance Board issued December 15, 1977, which affirmed the decision of Oakland County Hearing Panel No. 4 denying petitioner Freedman's reinstatement as a member of the State Bar.

The facts of this case are not in dispute. Petitioner Freedman was suspended from the practice of law commencing August 2, 1974 for a period of two years or until further order of the board. The suspension was ordered pursuant to a stipulation agreed upon by petitioner and the State Bar Grievance Administrator regarding a conviction in Federal court for housing fraud. The petitioner was charged with making a false statement in connection with an application for mortgage insurance sought for a client in his real estate business. Petitioner pled nolo contendere to the charge and was convicted on May 29, 1974. He was sentenced to imprisonment for a period of two years and to pay a "committed" fine in the amount of $5,000. According to his testimony before the panel, he served eight months in the Federal penitentiary at Terre Haute, Indiana. Petitioner was released April 28, 1975 on parole which expired May 28, 1976 without the fine having been paid.

On March 28, 1977, the present petition for reinstatement was filed with the State Bar. Petitioner by his own admission has never been an actively practicing member of the bar. Rather, his activities have centered on the real estate business. Prior to petitioner's conviction in 1974, the record indicates that he bought and sold homes under the corporate name of Bal Investment Com-

pany. At that time, he was listed in the telephone directory and the Lawyers Handy Book as an attorney. According to petitioner, he used his legal skills primarily in relation to his real estate transactions. Since his release from Federal prison, petitioner has been employed repairing houses for other real estate investors.

The findings of the hearing panel were in relevant part as follows:

"3. The petitioner filed a statement with the State Bar Grievance Board incidental to this petition for reinstatement which is false and misleading with respect to his qualifications to practice. His statement dated May 3, 1977, asserts, 'I passed the State Bar in 1960 and practiced law in Detroit until I was suspended from the practice of law on August 2, 1974, by the Michigan State Bar.' At the hearing, the petitioner was asked, 'Do I understand that you never formerly practiced law as an attorney and maintained a law office and practiced?' He answered, 'I did not, sir.' * * * The panel is satisfied that the oral testimony was correct and that petitioner has not ever engaged in active law practice and that his written statement to the contrary in support of his present petition was false and reflects adversely upon petitioner's integrity.

"4. Petitioner has not practiced law since suspension; however, he has been representing himself as an attorney in that he has permitted himself to be listed as an attorney in the telephone directory and in the Lawyers Handy Book published by National Bank of Detroit and has advertised himself as an attorney in the telephone directory yellow pages continuously during the period of suspension.

"5. Petitioner's personal and business conduct since his suspension has not demonstrated genuine remorse, exemplary conduct, and an appropriate attitude toward the standards imposed upon members of the bar, in the following particulars:

"A. Petitioner was suspended because of his conviction of criminal activity in housing frauds, in which he

would purchase HUD housing units, make minor repairs and restoration, resell them to unsophisticated members of the public, and pursue fraudulent and criminal schemes to arrange FHA financing for the purchasers for his own benefit and gain.

"B. After his release from prison, petitioner returned to the same business office where he was previously engaged in his criminal activities, and engaged in business activities related to the same business, providing repairs for homes purchased by speculative investors, obtaining city building and occupancy permits, and generally engaging in private business in the same field as led to his conviction and suspension from the bar.

"C. Until the date of hearing he had made no effort to pay the $5,000.00 fine which was imposed as a part of his sentence or to make payment on an $8,000.00 civil judgment which had been rendered against him in 1976 in Wayne County Circuit Court. He had, however, arranged for a mortgage lien in favor of his mother to be placed upon his home, sheltering his equity from the claims of other creditors, and to have the new Cadillac Seville automobile which he drives provided to him by a business client. Subsequent to the hearing, at which this issue was raised, the panel was informed that he had paid the civil judgment and arranged for payment of the fine."

In affirming the hearing panel's denial of reinstatement, the Grievance Board simply adopted the panel's findings.

When a petition for reinstatement is brought before the State Bar, the person so petitioning assumes the burden of establishing his eligibility by "clear and convincing evidence". State Bar Rule 15, § 7.[1] See also *In the Matter of Trombly,* 398 Mich 377, 381; 247 NW2d 873 (1976). Pursuant

[1] Effective October 1, 1978, a new rule replaced this former provision which governed cases arising at the time petitioner sought reinstatement. See GCR 1963, 972. Clause (e) of the former rule has been removed. Two new clauses have been added. See GCR 1963, 972.2(8) and (9). Otherwise, the rule remains virtually the same.

to this strict burden, the petitioner was required to demonstrate the following:

"(a) He desires in good faith to be restored to the privilege to practice law in this State;

"(b) The term of suspension prescribed in the order of suspension has elapsed or 5 years have elapsed since revocation of the license;

"(c) He has not practiced law contrary to the requirement of his suspension or revocation and has not attempted to do so since he was disciplined;

"(d) He has complied fully with the terms of the order for discipline;

"(e) His attitude towards the misconduct for which he was disciplined is one of genuine remorse;

"(f) His conduct since the discipline has been exemplary and above reproach;

"(g) He has a proper understanding of and attitude towards the standards that are imposed upon members of the bar and that he will conduct himself in conformity with such standards;

"(h) He can safely be recommended to the legal profession, the courts and the public as a person fit to be consulted by others and to represent them and otherwise to act in matters of trust and confidence, and in general to aid in the administration of justice as a member of the bar and as an officer of the courts." State Bar Rule 15, § 7.

A finding against petitioner by the panel or board must be sustained by "a preponderance of the evidence". *State Bar Grievance Administrator v Crane,* 400 Mich 484, 493; 255 NW2d 624 (1977). Our function in bar grievance matters is to determine whether the State Bar Grievance Board's findings "have proper evidentiary support on the whole record". *State Bar Grievance Administrator v Estes,* 390 Mich 585, 593; 212 NW2d 903 (1973). See, also, *State Bar Grievance Administrator v Posler,* 393 Mich 38, 39; 222 NW2d 511 (1974). Our

concern is the protection of the public, not the punishment of the attorney under investigation. See *In the Matter of Trombly, supra,* 382, citing *In re Echeles,* 374 F2d 780, 782 (CA 7, 1967). See, also, *Steere v State Bar of Texas,* 512 SW2d 362 (Tex Civ App, 1974); *In re Barton,* 273 Md 377, 381; 329 A2d 102, 104-105 (1974).

A review of the full record in the instant case indicates proper evidentiary support for the denial of reinstatement.

One significant point weighing against petitioner in this proceeding was his failure to attempt repayment of the $5,000 fine incident to his conviction in Federal court. The fine was a "committed" fine, one which required payment prior to release from prison. However, payment was not made because petitioner executed a pauper's oath based on an affidavit of indigency in November, 1974. He was thus released from prison without having paid the $5,000.

From that point on, petitioner's conduct has been less than exemplary in this matter. Rather than squarely face the responsibility which was directly connected to his suspension, petitioner openly admitted avoiding the issue altogether until the day of the hearing:

*"Q. [Mr. Reizen]:* And you indicated and admitted part of your sentence was a five thousand dollar fine and that was imposed upon you in May of 1974, is that correct?

*"A. [Petitioner]:* That's correct.

*"Q.* Then up until today, have you made any payments with respect to that fund *[sic,* fine]?

*"A.* I have not.

*"Q.* Have you even talked to anybody prior to today about paying that fund *[sic,* fine]?

*"A.* Nobody has contacted me regarding payment. I

did not have the means of paying so I did not contact them.

"*Q.* I see. So when your attorney says you have made arrangements with Mr. Kalil seated here, isn't it true that those arrangements were made this morning about five minutes before the hearing started?

"*A.* I stated that counsel, and—I stated that I did talk to Mr. Kalil today and I do have arrangements to call him this week and meet with him, possibly Thursday."

In fact, the record reflects that before the hearing Assistant United States Attorney Charles Kalil had sent unanswered demand notices to petitioner. These letters were dated May 23, 1977 and June 10, 1977.

By petitioner's own admission, his gross income from repair work in 1976 was "[a]bout twenty-three—twenty-four thousand". Yet, some two years elapsed between petitioner's release from Federal prison and his initial attempt to pay his obligation. Even then, he acted only under the pressure of possible denial of reinstatement.

Ultimately, petitioner has agreed with the United States Attorney's Office to repay the fine in increments of $25 or $50 a month, according to his attorney. Given the level of petitioner's annual income, we see no reason why such an attempt was not made prior to the reinstatement proceeding to defray this obligation. Petitioner had the burden by clear and convincing evidence to persuade the panel and board he has the proper understanding of and attitude towards the standards imposed on State Bar members and can be safely recommended to aid in the administration of justice. We find the evidence presented basis enough for the denial of reinstatement ordered by the hearing panel and board. *State Bar Grievance Administrator v Estes,* 390 Mich 597.

We find less persuasive, but significant, the fact that petitioner failed to remove his listing as an attorney from the telephone directory or Lawyers Handy Book. Though the evidence regarding the reasons for this failure is not entirely clear, the fact of the listings remain as a potential improper representation to the profession and the public.

Neither was petitioner entirely accurate in the statement which accompanied his petition to the board concerning his practice prior to suspension. The statement that he "practiced law" for some time after graduating from law school when he was not engaged in an active practice of any kind leaves room for an incorrect impression of petitioner's activity during this period.

Our review of the whole record, then, indicates there is proper support for the findings by the hearing panel and board that the petitioner did not establish his eligibility for reinstatement by clear and convincing evidence. We are especially cognizant of the fact that the hearing panel and board were in a position to observe the petitioner's demeanor and to hear the other witnesses first-hand. *In the Matter of Trombly, supra,* 382.

Affirmed.

COLEMAN, C.J., and WILLIAMS, FITZGERALD and RYAN, JJ., concurred with BLAIR MOODY, JR., J.

LEVIN, J. *(dissenting).* Burton R. Freedman's license to practice law was suspended for two years. His petition for reinstatement was denied by the State Bar Grievance Board. We would reverse and direct that he be reinstated.

I

Freedman pled nolo contendere to an informa-

tion charging that he made a false statement to the Department of Housing and Urban Development, a felony. Subsequently he agreed to a suspension of his license to practice law for two years which commenced August 2, 1974 and until the further order of the Grievance Board.

Freedman's petition for reinstatement was denied by the hearing panel and the board on the following findings:

—he had never practiced law, and no showing had been made that he was presently qualified to do so, and

—he spoke falsely when he gave a statement to a State Bar investigator that he had practiced law until his suspension, and

—he had not demonstrated genuine remorse,[1] exemplary conduct and an appropriate attitude toward the standards imposed upon members of the bar and could not be safely recommended to the profession, the courts and the public[2] in that

---

[1] See *In the Matter of Albert,* 403 Mich 346; 269 NW2d 173 (1978).

[2] The rule on reinstatement provided:

"Eligibility for Reinstatement. Upon expiration of any term of suspension not in excess of 120 days, such person so disciplined shall be automatically reinstated upon his filing with the clerk of the Supreme Court and the State Grievance Administrator an affidavit showing that he has fully complied with all the terms and conditions of the order of suspension. Any false statement contained in such affidavit shall be ground for disbarment.

"No person whose license to practice law has been revoked or suspended for a term in excess of 120 days shall be eligible for reinstatement as a member of the bar of this State unless he has petitioned for reinstatement in conformity with Rule 16.20 of the Procedural and Administrative Rules of the State Bar Grievance Board and has established by clear and convincing evidence that:

"(a) He desires in good faith to be restored to the privilege to practice law in this State;

"(b) The term of suspension prescribed in the order of suspension has elapsed or 5 years have elapsed since revocation of the license;

"(c) He has not practiced law contrary to the requirement of his suspension or revocation and has not attempted to do so since he was disciplined;

"(d) He has complied fully with the terms of the order for discipline;

(i) although he had been suspended because of a housing fraud conviction, upon release from prison he returned to the same and related business activities as had led to his conviction and suspension, and

(ii) until the date of the hearing he had made no effort to pay the fine imposed as part of his sentence or a civil judgment rendered against him in a circuit court proceeding.[3]

"(e) His attitude towards the misconduct for which he was disciplined is one of genuine remorse;

"(f) His conduct since the discipline has been exemplary and above reproach;

"(g) He has a proper understanding of and attitude towards the standards that are imposed upon members of the bar and that he will conduct himself in conformity with such standards;

"(h) He can safely be recommended to the legal profession, the courts and the public as a person fit to be consulted by others and to represent them and otherwise to act in matters of trust and confidence, and in general to aid in the administration of justice as a member of the bar and as an officer of the courts." State Bar Rule 15, § 7.

New rules, effective October 1, 1978, have been adopted. See GCR 1963, 972. Clauses (g) and (h) of the former rule are retained in the new rule without substantive changes, GCR 1963, 972.2(6) and (7). Clause (e) of the former rule has been eliminated.

The new rules add the following requirements:

"(8) for a suspension of 3 years or more, he has been recertified by the Board of Law Examiners; and

"(9) he has reimbursed or has agreed to reimburse the Client Security Fund any money paid from the fund as a result of his conduct. Failure to fully reimburse as agreed is ground for revocation of a reinstatement." GCR 1963, 972.2(8) and (9).

[3] The Grievance Board adopted the hearing panel's findings, stating:

"5. Petitioner's personal and business conduct since his suspension has not demonstrated genuine remorse, exemplary conduct, and an appropriate attitude toward the standards imposed upon members of the bar, in the following particulars:

"A. Petitioner was suspended because of his conviction of criminal activity in housing frauds, in which he would purchase HUD housing units, make minor repairs and restoration, resell them to unsophisticated members of the public, and pursue fraudulent and criminal schemes to arrange FHA financing for the purchasers for his own benefit and gain.

"B. After his release from prison, petitioner returned to the same business office where he was previously engaged in his criminal activities, and engaged in business activities related to the same

We conclude that Freedman was not obliged to show that he was currently qualified by training and experience to practice law. His mere reentry into the real estate business was not a disqualifying factor. Shortly after the hearing and, as appears from the panel's findings, before the record was closed, the civil judgment was satisfied and arrangements satisfactory to the government were made to pay the fine; there was no evidence that Freedman had the means to pay these amounts earlier.

II

Freedman's professional competence was not implicated by the suspension or grounds for suspension; he was not disciplined for malpractice. He was not obliged to negative repetition of conduct for which he had not been disciplined.

The new rules concerning bar grievances and discipline, effective October 1, 1978, provide that a lawyer seeking reinstatement who has been suspended for three years or more must be "recertified by the Board of Law Examiners".[4] The rule was not in effect when Freedman sought reinstate-

---

business, providing repairs for homes purchased by speculative investors, obtaining city building and occupancy permits, and generally engaging in private business in the same field as led to his conviction and suspension from the Bar.

"C. Until the date of hearing he had made no effort to pay the $5,000.00 fine which was imposed as a part of his sentence or to make payment on an $8,000.00 civil judgment which had been rendered against him in 1976 in Wayne County Circuit Court. He had however, arranged for mortgage lien in favor of his mother to be placed upon his home, sheltering his equity from the claims of other creditors, and to have the new Cadillac Seville automobile which he drives provided to him by a business client. Subsequent to the hearing, at which this issue was raised, the Panel was informed that he had paid the civil judgment and arranged for payment of the fine."

[4] See fn 2.

ment. Nor was he suspended for three years or more.

## III

The statement obtained by the State Bar investigator reads:

"I was born February 17, 1934 in Detroit, Michigan. I attended the Detroit College of Law and graduated in 1960. I passed the State Bar in 1960 and practiced law in Detroit until I was suspended from the practice of law on August 2, 1974 by the Michigan State Bar. I was in the real estate business as an investor. I pled nolo contendere to charges against me brought by the Federal authorities in Federal Court, which charged me with having made false statements to the Department of Housing and Urban Development in violation of Title 18, Section 1010 and 2(B), US Code."

At the reinstatement hearing, Freedman said that he had never maintained a law office or formally practiced law. While he had not engaged in the general practice of law, he had engaged in some practice of law in connection with real estate transactions and closings. He had stationery and cards stating that he was an attorney at law.[5]

Freedman evidently regarded some of his activities in connection with his real estate business as constituting the practice of law. The statement given the investigator that he practiced law in Detroit, read in light of the further statement that

[5] The panel found that Freedman had not practiced during his suspension. It stated that he had, however, represented himself as an attorney by permitting himself to be listed as an attorney in the telephone directory and in the Lawyers Handy Book published by the National Bank of Detroit. Freedman testified that he had his name removed from the Lawyers Handy Book when he learned that he had been listed, and that he was not aware that the telephone company had listed him as an attorney in the white pages; no evidence to the contrary was offered.

he was in the real estate business as an investor and his testimony that he regarded some features of his real estate activities as constituting the practice of law, does not support a finding that he spoke falsely to or misled, or sought to mislead, the investigator.

Some members of the bar who cease actively to practice law maintain their "active" status by paying the bar dues. They engage, in other businesses, in activities which laymen hire lawyers to perform and for which lawyers bill clients for professional services rendered. Although some such activities may be performed by laymen without becoming involved in the unauthorized practice of law, lawyers so often are called upon to provide such services and do so as lawyers that it cannot be said that a lawyer is speaking falsely or misleadingly when he asserts that when he engages in such activities he is practicing law.

## IV

While Freedman strayed outside the law in his real estate business, it does not follow that because he returned to that business he will again act unprofessionally. There is no reason to suppose that he will again engage in unprofessional activity. The Grievance Board may not, merely because Freedman returned to the real estate business, transform a two-year suspension, in effect, into permanent disbarment.

## V

Freedman explained that he had not paid the fine or the civil judgment because he did not have sufficient funds. There is no evidence that he did have the means but, nevertheless, did not pay.

Shortly after the hearing and before decision, he satisfied the civil judgment and made arrangements satisfactory to the United States Attorney's office for payment of the fine and made a partial payment. The government's willingness to release Freedman from prison without payment of any portion of the fine, its failure during the "some two years" after his release from prison to seek payment, and the relatively small monthly amount, payable over an extended period of time, it was willing to accept, support Freedman's testimony that he did not have the means to pay the fine earlier. He had been in prison and may well have had obligations to others who were pressing him for payment. It does not appear that he had the means to make earlier payment.

## VI

Freedman's mother obtained a mortgage on his home to secure indebtedness to her. The indebtedness appears to have been genuine. The apparent assumption of the Grievance Board that the lien was given to secure the equity in the home from the claims of creditors rather than to secure his mother is not supported. Freedman's action in securing his indebtedness to his mother with a mortgage was neither dishonorable nor unprofessional.

Nor do we think Freedman can be denied reinstatement because he was driving an expensive automobile that had been provided for him.

## VII

Freedman was suspended because he had been convicted of a Federal offense. He did not violate any condition of the suspension. He made arrange-

ments, although somewhat belatedly, to pay the fine and satisfied the judgment; it does not appear that he had the means of paying earlier. His return to the business in which he had earned his living for many years violated no condition of suspension and is not a badge of actual or potential misconduct.

Freedman, like many "active" members of the State Bar, did not actively practice law. Concern has been expressed about the continuing licensing of lawyers who do not keep abreast of developments or maintain their skills. Proposals have been made regarding voluntary and mandatory continuing legal education and recertification. The State Bar and this Court have studied the subject matter over a considerable period of time but have not resolved on a course of action. This difficult problem should not be dealt with adventitiously in the case of one hapless member of the bar who, for reasons unrelated to his legal skills, finds himself involved in grievance proceedings.

To be sure, the rule requires that a lawyer seeking reinstatement carry the burden of showing that he can be "safely recommended", but that burden is discharged when the suspended lawyer addresses the concerns which gave rise to his discipline and any other substantial claim of misconduct which may surface before he is reinstated. Freedman carried that burden.

KAVANAGH, J., concurred with LEVIN, J.