GRIEVANCE ADMINISTRATOR v AUGUST

Docket No. 88132. Argued April 2, 1991 (Calendar No. 6). Decided August 29, 1991.

Irving A. August was convicted in the United States District Court for the Eastern District of Michigan, Southern Division, Ralph M. Freeman, J., of conspiring to defraud the United States of the due administration of justice, impeding the due administration of justice, and attempting to influence a court clerk in the discharge of her official duties. In an opinion by Timbers, J., joined by Contie and Wellford, JJ., the United States Court of Appeals for the Sixth Circuit affirmed. 745 F2d 400 (CA 6, 1984). Upon conviction, August was automatically suspended from the practice of law, and, following a hearing before the Wayne County hearing panel, his license was revoked. On October 28, 1988, August petitioned for reinstatement of his license to practice law pursuant to MCR 9.123(B). The Wayne County hearing panel denied reinstatement, finding that August had not established by clear and convincing evidence that he could be safely recommended to the practice of law and that his subsequent conduct, no matter how exemplary, had not sufficiently ameliorated the taint placed upon the legal profession, by his commission of the crimes in question, to the extent that he could now be safely recommended as a person of trust. The Attorney Discipline Board reversed, finding that the petitioner had established his eligibility for reinstatement in accordance with the rule. The grievance administrator appeals.

In an opinion by Justice BOYLE, joined by Justices BRICKLEY, RILEY, GRIFFIN and MALLETT, the Supreme Court held:

The nature of the offense and the time elapsed since its commission and disbarment are relevant and important considerations in determining whether a disbarred attorney should be recommended to the position of public trust that is held by members of the Michigan State Bar. An attorney may be

REFERENCES

Am Jur 2d, Attorneys at Law § 99.

Reinstatement of attorney after disbarment, suspension, or resignation. 70 ALR2d 268.

denied readmission on the grounds that sufficient time has not passed to determine the present fitness of the applicant for readmission, but such a denial should not be deemed a permanent disbarment. In this case, the order of the Attorney Discipline Board must be vacated and the matter remanded to the board to determine whether, in light of the seriousness of the petitioner's crimes and the time elapsed, the petitioner can now confidently be reinstated.

1. Findings of the hearing panel and the Attorney Discipline Board are to be reviewed for proper evidentiary support on the whole record. In this case, there is no challenge to the factual findings, but rather to the panel's determination that the petitioner should not now be reinstated. While the board reviews that judgment for adequate evidentiary support, it possesses a measure of discretion with regard to its ultimate decision; however, the ultimate power to regulate and discipline members of the bar rests with the Supreme Court. Because the board applied an erroneous interpretation of the standards for reinstatement, the order of the Attorney Discipline Board must be vacated.

2. An attorney whose license has been revoked bears the burden of showing by clear and convincing evidence that the conditions for reinstatement under MCR 9.123(B)(1)-(9) have been met. The focus in this case is on subrule 7: whether the petitioner safely can be recommended to the public, the courts, and the legal profession as a person fit to practice law. Both the nature of the conduct for which he was disbarred and the passage of time since disbarment are appropriate considerations. The essence of the decision to reinstate is a balancing process, weighing the seriousness of the misconduct and the court's duty to society against the petitioner's subsequent conduct and reformation, and each case is to be considered on its own facts. A showing of present fitness may require a lengthier period of rehabilitation in the case of an attorney who has engaged in a repeated or calculated series of acts designed to corrupt the administration of justice than in the case of an attorney whose disbarment resulted from a single instance of similar conduct.

3. MCR 9.123(B) does not provide for automatic reinstatement after five years; rather, that period of time should be interpreted as the minimum period in which rehabilitation may occur. A petitioner must satisfy each requirement of MCR 9.123(B)(1)-(9). While the factors are interrelated, each has independent significance, and several of the subrules require subjective judgment in their application. A determination that

sufficient time has not passed to allow the panel or board to declare the petitioner rehabilitated is not tantamount to permanent disbarment or a declaration that the petitioner will never be rehabilitated.

Vacated and remanded for further action as the board deems appropriate pursuant to MCR 9.118(C)(2), (D).

Chief Justice CAVANAGH, concurring in part and dissenting in part, stated that where the Attorney Discipline Board and a hearing panel disagree, the Supreme Court should exercise greater scrutiny of the board's decision in order to ascertain whether the board itself properly accorded the panel all due deference. In this case, while the board purported to follow the correct standard of review, it in fact simply substituted its judgment de novo for that of the panel. The panel's denial of the petition for reinstatement did not lack proper evidentiary support on the whole record. There is ample evidence on this record from which the panel reasonably could conclude, as it did, that the petitioner at this time does not qualify for reinstatement under MCR 9.123(B)(7). Given the gravity of his prior criminal misconduct, striking at the heart of the fair administration of justice, as weighed against his subsequent rehabilitation, he cannot safely be recommended at this time as a person fit to reassume the privilege of practicing law. The board's decision simply should be reversed and the hearing panel's denial reinstated.

Justice LEVIN, dissenting, stated that the order of the Attorney Discipline Board should be affirmed. MCR 9.123 provides that a lawyer who has been disbarred may be reinstated by the Attorney Discipline Board if the board concludes that the lawyer's conduct has satisfied enumerated criteria. The question posed by the rule is whether the petitioner, if reinstated, will conduct himself in accordance with the standards imposed on the profession and safely can be recommended to the public, the courts, and the legal profession. If the board so concludes on the basis of adequate evidence, it is beside the point that his misconduct was an embarrassment to the profession. If he can be safely recommended, the board is authorized to reinstate him, and that determination should be accepted. The record clearly and convincingly establishes that the petitioner's conduct since he was disbarred has been exemplary and above reproach and that he would avoid even the appearance of impropriety were he to be reinstated. The board's conclusion that the seriousness of the misconduct did not justify denial of reinstatement has proper evidentiary support on the whole record.

ATTORNEY AND CLIENT — DISBARMENT — REHABILITATION — RE-
INSTATEMENT.

The nature of an offense that resulted in an attorney's disbar-
ment as well as the time elapsed since its commission and since
the disbarment are relevant and important considerations in
determining whether the attorney should be recommended to
the position of public trust held by members of the bar; re-
instatement may be denied on the grounds that sufficient time
has not passed to determine the present fitness of the appli-
cant, and such denial should not be deemed a permanent
disbarment (MCR 9.123[B][1]-[9]).

*Philip J. Thomas,* Grievance Administrator (by
*Murray J. Muscat*), for the respondent.

*Colista, Adams & Palmer, P.C.* (by *F. Philip
Colista*), for the petitioner.

Amicus Curiae:

*Michael Franck,* Counsel of Record, and *Marcia
L. Proctor* for the State Bar of Michigan.

BOYLE, J. We are asked to review the Attorney
Discipline Board's order reinstating the license of
Irving August to practice law in the State of
Michigan. We vacate the Attorney Discipline
Board's order of reinstatement, and remand to the
board for reconsideration in light of this opinion.

FACTS

On June 28, 1983, petitioner was convicted of
conspiring to defraud the United States of the due
administration of justice in violation of 18 USC
371, impeding the due administration of justice in
violation of 18 USC 1503, and attempting to influ-
ence a court clerk in the discharge of her official
duties in violation of 18 USC 1503. These convic-
tions stemmed from Mr. August's collaboration
with a clerk of the court to manipulate the blind-

draw system for assigning judges in the United
States Bankruptcy Court for the Eastern District
of Michigan. The object was to avoid assignment of
cases to Judge George Brody, who, of the three
judges sitting on the bankruptcy court, was known
to scrutinize and reduce attorney fees. In affirming
August's conviction, the United States Court of
Appeals for the Sixth Circuit detailed the facts
and circumstances surrounding the convictions:

> The relevant period of time is that covered by
> the counts of the indictment related to this appeal
> —from October 3, 1979 to October 30, 1980. Dur-
> ing this period, three bankruptcy judges sat in the
> Eastern District of Michigan, Southern Division:
> Judge Hackett, Judge Brody, and Judge Patton.
> Judge Patton took all of the Chapter 13 cases. A
> blind draw system was designed to assign to him
> approximately 30% of the Chapter 7 and Chapter
> 11 cases. The system was operated by using decks
> of 100 3" × 5" index cards, each typically con-
> taining 30 marked for Judge Patton and 35
> marked for each of Judges Brody and Hackett. The
> cards were shuffled, numbered, and sealed on three
> sides so that the judge's name was not visible. In
> eighteen of the seventy-two packs used while Bo-
> goff was an intake clerk, the order of the cards
> was adjusted so that no two cards bearing the
> same judge's name were next to each other; in
> other cases, the cards were randomly mixed. When
> a bankruptcy petition was filed, the intake clerk
> removed the top card from a judge assignment
> deck, turned it over to reveal the name of the
> judge to whom the case was assigned, and stamped
> that judge's name on the petition.
> August's law firm filed about one-half of the
> Chapter 11 cases in the Eastern District of Michi-
> gan during the period here involved. August had a
> romantic relationship during this period with in-
> take clerk Bogoff.[2] Although she was not the only
> clerk in the office and filed only about half of all
> bankruptcy petitions, she arranged matters so that

she handled almost all of the judge assignments in cases involving August's firm. She allowed members of that firm to come behind the counter to drop off filings without waiting in line. She permitted August to leave on her desk his briefcase containing filings.

The government's theory was that Bogoff would take several petitions to the counter, draw a card and look at the judge's name. If Judge Patton's or Judge Hackett's name appeared, she would file the Chapter 11 petition presented by the August firm.[3] Sixty-eight Chapter 11 cases were filed by August's firm during this period, of which 92% were handled by Bogoff and only nine initially were assigned to Judge Brody. If multiple petitions were filed involving the same parties, the cases were eventually consolidated and assigned to the judge to whom the first of the petitions had been assigned. After consolidations, only four Chapter 11 cases filed by the August firm remained assigned to Judge Brody.[4]

At trial, the government adduced circumstantial evidence that it was possible to manipulate the blind draw system; that Bogoff had filed almost all of August's cases; and that a disproportionately low percentage of August's cases were assigned to Judge Brody. Professor David Doane, an expert statistician, testified that there was a 99.97% chance that more August cases would have been assigned to Judge Brody if the blind draw system were truly random.

---

[2] August contributed significantly to Bogoff's support. In 1980, he deposited directly into her personal bank account checks from his law firm clients totalling more than $11,000.

[3] Defendants' theory was that members of August's firm would wait outside the intake window until Judge Brody was assigned to another case, then step up to the window, assuming that no judge's name appeared on two consecutive cards. But only eighteen of the seventy-two decks used while Bogoff was an intake clerk were arranged so that no judge's name appeared twice in sequence. This theory was refuted conclusively at trial on a number of grounds, including the fact that the mathematical odds against Judge Brody's assignment to so few August cases were 99 to 1 *even if* members of the firm behaved in the manner appellants suggest.

4 August considered Judge Brody a difficult judge before whom to practice. Specifically, August thought that Judge Brody awarded smaller attorney fees. In 1978, August told Judge Brody in chambers that he could not afford to handle such cases if Judge Brody continued to reduce his fee awards so much. He asked Judge Brody to transfer all of the August firm cases to which Judge Brody had been assigned to Judge Hackett (a personal friend of August). Judge Brody refused to do so.

[*United States v August,* 745 F2d 400, 402-403 (CA 6, 1984).]

On the same day that the judgments of conviction were entered, petitioner was automatically suspended from the practice of law pursuant to GCR 1963, 969.1(b).[1] On July 20, 1984, following public hearings, a Wayne County hearing panel ordered the license of Irving August revoked.

Meanwhile, in November, 1984, following the affirmance of his convictions,[2] petitioner began serving his concurrent two-year sentences at the federal prison in Marion, Illinois. In the fall of 1985, he was transferred to a half way house in the City of Detroit. He remained there until November 19, 1985, when district court Judge Ralph Freeman reduced the sentence to time already served. Thus, August served approximately one year of incarceration.

The petition for reinstatement of his license to practice law was filed October 28, 1988. Hearings were held for four days, and on August 17, 1989, the Wayne County hearing panel issued its report and order denying reinstatement. The three-member panel was split, with Chairman Harry A. Carson favoring reinstatement. The two-member majority adopted Chairman Carson's findings of

1 GCR 1963, 969.1(b) provided for the automatic suspension of an attorney convicted of a felony until the effective date of an order filed by a hearing panel. GCR 1963, 969.1(b) was replaced by MCR 9.120(A)(1).

2 745 F2d 400 (CA 6, 1984).

fact, which summarized the testimony. The majority also accepted the dissenter's conclusion that petitioner had shown by clear and convincing evidence that he had fulfilled the requirements for reinstatement set forth in MCR 9.123(B), with one crucial exception: The majority found that the petitioner had not established by clear and convincing evidence that he could be safely recommended to the public, the courts, and the legal profession as a person fit to be consulted by others and to represent them and otherwise act in matters of trust and confidence, and, in general, to aid in the administration of justice as a member of the bar and as an officer of the court as required by MCR 9.123(B)(7). The majority stated that "[t]he nature and seriousness of [petitioner's] acts must be considered in assessing the ability to safely recommend the petitioner to the public, the courts and the legal profession." Ultimately, the reinstatement panel was not convinced "that petitioner's subsequent conduct, no matter how exemplary, has sufficiently ameliorated the taint placed upon the legal profession, by his commission of the crimes in question, to the extent that he could now be safely recommended as a person of trust."

On review, the Attorney Discipline Board posed its inquiry as "whether there is proper evidentiary support in the record for the conclusion of the hearing panel majority that the nature of [petitioner's] criminal conduct constitutes a bar to his reinstatement, regardless of his subsequent exemplary behavior." In the view of the discipline board, affirmance of the panel's denial of reinstatement would require a ruling that certain types of professional misconduct are so egregious that reinstatement should never be granted. Noting that the Michigan Supreme Court had never so ruled, the discipline board found that petitioner had

established his eligibility for reinstatement in accordance with the present rules. On December 22, 1989, the Attorney Discipline Board entered an order reversing the hearing panel's denial of reinstatement, and granted the petition for reinstatement.

This Court granted the grievance administrator's application for leave to appeal on December 6, 1990. 437 Mich 1202.

### STANDARD OF REVIEW

It has been stated many times that the findings of the hearing panel and the Attorney Discipline Board are to be reviewed for proper evidentiary support on the whole record. *In re Freedman,* 406 Mich 256; 277 NW2d 635 (1979); *In re Grimes,* 414 Mich 483; 326 NW2d 380 (1982). In this case, there is no challenge to the factual findings of the hearing panel,[3] but rather to the panel's ultimate determination that petitioner should not now be reinstated. While the board reviews that judgment for adequate evidentiary support, the board at the same time possesses a measure of discretion with regard to its ultimate decision. MCR 9.118(D), *In re Daggs,* 411 Mich 304, 318-319; 307 NW2d 66 (1981). The power to regulate and discipline members of the bar rests ultimately with this Court pursuant to constitutional mandate. Const 1963, art 6, § 5; *In re Schlossberg v State Bar Grievance Bd,* 388 Mich 389; 200 NW2d 219 (1972).

Because the board applied an erroneous interpretation of the standards for reinstatement, we

---

[3] Primary fact-finding responsibility is entrusted to the hearing panel, which is required by MCR 9.111(B)(2) to "[r]eceive evidence and make written findings of fact." The board does not itself possess fact-finding powers; however, it may on review of a panel decision order testimony taken, which will be done by a panel or master who is then required to make a supplemental report. MCR 9.118(C)(2).

vacate its order, and remand to the board for further consideration in light of this opinion.

## ANALYSIS

An attorney whose licence has been revoked bears the burden of showing by clear and convincing evidence that the conditions of eligibility for reinstatement have been met. Those conditions are set forth in MCR 9.123(B)(1)-(7), as follows:

> (1) he or she desires in good faith to be restored to the privilege of practicing law in Michigan;
> (2) the term of the suspension ordered has elapsed or 5 years have elapsed since revocation of the license;
> (3) he or she has not practiced or attempted to practice law contrary to the requirement of his or her suspension or revocation;
> (4) he or she has complied fully with the order of discipline;
> (5) his or her conduct since the order of discipline has been exemplary and above reproach;
> (6) he or she has a proper understanding of and attitude toward the standards that are imposed on members of the bar and will conduct himself or herself in conformity with those standards;
> (7) he or she can safely be recommended to the public, the courts, and the legal profession as a person fit to be consulted by others and to represent them and otherwise act in matters of trust and confidence, and in general to aid in the administration of justice as a member of the bar and as an officer of the court . . . .

(Subrules 8 and 9 are not relevant to this case.)

The focus in this case has narrowed to the criterion set forth in subrule 7: Can petitioner "safely be recommended to the public, the courts, and the legal profession as a person fit to be

consulted by others and to represent them and otherwise act in matters of trust and confidence, and in general to aid in the administration of justice as a member of the bar and as an officer of the court"?

Petitioner concedes, but we find it appropriate to emphasize, that the nature of the misconduct for which an attorney was disbarred must be considered in the proceedings for reinstatement. In *In re Brown,* 166 W Va 226, 234; 273 SE2d 567 (1980), the court observed:

> It is generally agreed that in assessing an application for reinstatement consideration must be given to the nature of the original offense for which the applicant was disbarred. *Obviously, the more serious the nature of the underlying offense, the more difficult the task becomes to show a basis for reinstatement.* [Emphasis added.]

In *In re Keenan,* 313 Mass 186, 218; 47 NE2d 12 (1943), the court sought evidence sufficient to outweigh the adjudicated fact of the petitioner's guilt of corruptly influencing jurors, an offense "of the gravest character." The court in *In re Gordon,* 385 Mass 48, 54; 429 NE2d 1150 (1982), recognized the need to "look behind subjective testimonials as to the present good character of the petitioner, and the most relevant objective fact is the public record of the conduct which caused the disbarment in the first place." See also *In re Cantrell,* 785 P2d 312 (Okla, 1989) (the worse the offense, the heavier the burden to obtain reinstatement).

It is also generally recognized that the passage of time is relevant to the question of rehabilitation. A long time period in which the petitioner's conduct has been exemplary will reinforce a claim of rehabilitation. *In re Hiss,* 368 Mass 447; 333 NE2d 429 (1975). The court in *In re Ansley,* 241

Ga 394; 245 SE2d 657 (1978), similarly held that the petitioner had not proved that the seriousness of his offense (bribery) had been offset by a sufficiently long period of rehabilitation.

We agree with the frequently stated principle that the essence of the decision to reinstate is a balancing process. The essential considerations were well articulated in the Maryland case, *In re Raimondi,* 285 Md 607, 618; 403 A2d 1234 (1979), cert den 444 US 1033 (1980):

> On one side of the scale is placed the seriousness of the misconduct which produced disbarment and the court's duty to society at large to see that only those persons who are worthy of the faith and confidence of the general public are permitted to handle the affairs of others. . . . On the other side are placed the subsequent conduct and reformation of such individual, his present character, his present qualifications and competence to practice law, and the fact that the very nature of law practice places an attorney in a position where an unprincipled individual may do tremendous harm to his client.

The hearing panel expressly recognized the relevance of the nature of the offense as well as the time elapsed when it stated: "We, as members of the reinstatement panel are . . . very concerned about the nature of the crimes committed by the petitioner. We are not convinced that petitioner's subsequent conduct, no matter how exemplary, has sufficiently ameliorated the taint placed upon the legal profession, by his commission of the crimes in question, to the extent that he could *now* be safely recommended as a person of trust." (Emphasis added.)

On review of the panel's decision, the board looked for evidentiary support in the record for

what it characterized as the panel's conclusion that the nature of petitioner's criminal conduct constituted a bar to his reinstatement. The board viewed the panel's decision as a permanent disbarment. In the board's view, "[a]ffirmation of the denial of reinstatement in this case demands a ruling that there are certain types of professional misconduct which are so egregious that reinstatement should never be granted." The board found a fundamental incongruity between the panel's conclusion that petitioner had established by clear and convincing evidence that he had fulfilled the terms of subrule 6,[4] but that petitioner nevertheless could not safely be recommended to the public, the courts, and the profession as a person fit to be consulted by others and to represent them and otherwise act in matters of trust and confidence, and, in general, to aid in the administration of justice as a member of the bar and as an officer of the court, as required by subrule 7.

We discern in the board's reasoning a suggestion that reinstatement is automatic upon satisfaction of the criteria set forth in MCR 9.123(B)(1)-(6), that the passage of time is not a relevant consideration beyond the terms of subrule 2,[5] and that denial of reinstatement *now* is tantamount to permanent disbarment. These implications flow from the board's statement that "the Court Rules have extended to Mr. August the promise that he could file a petition for reinstatement after five years." The board approved similar reasoning from the

[4]  [H]e or she has a proper understanding of and attitude toward the standards that are imposed on members of the bar and will conduct himself or herself in conformity with those standards. [MCR 9.123(B)(6).]

[5]  [T]he term of the suspension ordered has elapsed or 5 years have elapsed since revocation of the license. [MCR 9.123(B)(2).]

dissenting opinion of hearing panel Chairman Carson:

> As serious as August's crimes were, the Court
> rules, have at all times since his disbarment, led
> the petitioner to believe that he could file a peti-
> tion for reinstatement after five years. Nowhere is
> it stated in the rules that a person convicted of a
> heinous crime, or manipulating the justice system,
> or committing homicide, or some other crime, shall
> be permanently disbarred. Had the Supreme Court
> wished to preclude certain offenders from ever
> applying for reinstatement, it would have said so
> pursuant to its rule making powers.

The rules do indeed promise that a disbarred
attorney may apply for reinstatement after five
years. However, we perceive this temporal mile-
post as fixing the minimum time after which a
disbarred attorney may be declared rehabilitated.[6]
We reject the implication that if five years have
elapsed, the passage of time is otherwise irrelevant
to the determination of present fitness for rein-
statement. The determination whether the dis-
barred attorney may be safely recommended to the
position of public trust held by members of the
state bar necessarily requires consideration of the
time elapsed since disbarment and since the com-
mission of the acts resulting in disbarment. This is
only consonant with the established principle that
each attorney misconduct case is to be considered
on its own facts. *Grimes,* 414 Mich 490; *State Bar
Grievance Administrator v Del Rio,* 407 Mich 336,
350; 285 NW2d 277 (1979). Obviously, the question
whether an attorney may be safely recommended
to the public is a different inquiry in the case of an

---

[6] In California it is held that although an attorney may seek
reinstatement after five years, reinstatement is not automatic. *In re
Nevill,* 39 Cal 3d 729; 217 Cal Rptr 841; 704 P2d 1232 (1985).

attorney disbarred for corrupting the administration of law than in the case of an attorney whose disbarment resulted from conduct unrelated to the practice of law. It is also obvious that a showing of present fitness may require a lengthier period of rehabilitation where an attorney has engaged in a repeated or calculated series of acts designed to corrupt the administration of justice than in the case of an attorney whose disbarment resulted from a single instance of similar conduct. Thus, the five-year period described in MCR 9.123(B)(2) should be interpreted as a minimum period in which rehabilitation may occur following revocation of the license to practice law; the passage of five years in no way guarantees eligibility for reinstatement.

Next we turn to the board's suggestion that if the hearing panel found that subrule 6 was met, it could not consistently find that subrule 7 was not satisfied. This reasoning would render MCR 9.123(B)(7) wholly superfluous. The criteria set forth in subrules 1-9 are designed to achieve an appropriate balance between the duty of this Court to protect the public and the profession, and the interests of the attorney in a fair evaluation of his petition to regain his livelihood. The petitioner must satisfy each requirement, and while the factors are interrelated, each has independent significance. We find that subrule 6 is primarily directed to the question of the applicant's ability, willingness and commitment to conform to the standards required of members of the Michigan State Bar. Subrule 7 shifts the focus to the public trust which this Court has the duty to guard. The purpose of this Court's disciplinary power is to protect the public, the courts, and the legal profession. MCR 9.102(A). The license to practice law is "a continuing proclamation by the Supreme Court that the

holder is fit to be entrusted with professional and judicial matters and to aid in the administration of justice as an attorney and counselor and as an officer of the court." MCR 9.103(A). Subrule 7, with its reference to whether the applicant may be safely recommended to this position of trust, necessarily involves the discretionary question whether this Court is willing to present that person to the public as a counselor, member of the state bar, and officer of the court bearing the stamp of approval from this Court.

We recognize that the foregoing discussion implies an element of subjective judgment in the application of MCR 9.123(B). We find this appropriate for two reasons.

First, several of the requirements for reinstatement eligibility set forth in MCR 9.123(B) are of an inherently subjective nature.[7] Determining whether the applicant desires in good faith to be restored to the privilege of practicing law, MCR 9.123(B)(1) requires subjective judgment, as does the determination whether the applicant has a proper understanding of and attitude toward the standards imposed on members of the bar and will act in conformity with those standards, MCR 9.123(B)(6), and whether the applicant can safely be recommended to the public and the legal profession as a person fit to be consulted by others and to represent them and otherwise act in matters of trust and confidence, and, in general, to aid in the

[7] Obviously, some of the eligibility requirements may be verified objectively, for example, whether the term of suspension has elapsed or five years have elapsed since revocation of the license, MCR 9.123(B)(2). The requirements set forth in subrules 3 (the applicant has not practiced or attempted to practice law during period of suspension or revocation), 4 (the applicant has complied fully with the order of discipline), and 5 (the applicant's conduct since the order of discipline has been exemplary and above reproach) may be verified objectively as well, but may in some instances require judgments on the basis of the evidence.

administration of justice as a member of the bar and as an officer of the court, MCR 9.123(B)(7).

Second, the reinstatement process offers the sole opportunity for distinguishing between dissimilar acts of misconduct which may have resulted in a suspension of more than 119 days[8] or the revocation of the license to practice law.[9] While there are a number of disciplinary measures less than license revocation,[10] there are none more severe. The most severe sanction which may be imposed for a single violation of a serious nature is the same sanction available for multiple instances of the same misconduct. The most severe sanction for misconduct corrupting the administration of justice is the same sanction for severe misconduct unrelated to the practice of law. Without considering the nature of the misconduct, the panel or board has no basis to determine whether an attorney whose license was revoked has become fit to hold the public trust by practicing law.

Finally, we do not agree with the board's assessment that the reinstatement criteria allow only two possibilities: that petitioner be now readmitted or forever barred from the practice of law in this state. A third alternative is illustrated in this case, where the hearing panel determined that peti-

[8] See MCR 9.123(B).

[9] Justice LEVIN in In re Albert, 403 Mich 346; 269 NW2d 173 (1978), criticized MCR 9.123 (then State Bar Rule 15) for failing to separate the substantive criteria for reinstatement in cases of disbarment and suspension. Justice LEVIN opined that the structure of the rule "causes doubt about the character and quantum of proof appropriate in each case, leading to uneven application of the rule." Id. at 355. Despite Justice LEVIN's criticism in Albert, we have retained the rule essentially unchanged over the intervening thirteen years. This is consonant with our holding today that the rule envisions the use of discretion in the application of its standards to varying factual situations. While the quantum of proof remains in each case the same —clear and convincing evidence—the factual showing required to carry that burden necessarily and appropriately depends on the facts of the particular case.

[10] See MCR 9.106(2)-(6).

tioner "could not *now* be safely recommended as a person of trust." (Emphasis added.) A determination that sufficient time has not passed to allow the panel or board to declare petitioner rehabilitated and confidently hold him out as a person of trust is not a declaration that petitioner will never be rehabilitated and can never regain the privilege of practicing law in this state. A number of jurisdictions hold that there is conduct so egregious that it should preclude reinstatement to the practice of law. See *In re Russo,* 244 Kan 3; 765 P2d 166 (1988).[11] We need not rule on that question because we are not prepared to say that this is such a case. While we can hypothesize a situation in which repeated denials of reinstatement might amount to permanent disbarment, this clearly is not that case. We remand to the Attorney Discipline Board to reëxamine whether, in light of the seriousness of petitioner's crimes and the time elapsed, petitioner can now be confidently recommended to the position of trust that is held by members of the state bar. On remand, the board either may affirm the order of the hearing panel or take such other action as it deems appropriate, including the taking of further testimony. MCR 9.118(C)(2), (D).

CONCLUSION

We hold today that the nature of the offense and the time elapsed since its commission and since disbarment are relevant and important considera-

---

[11] See also *In re Kerr,* 424 A2d 94 (DC App, 1980) (the statute requiring an attorney convicted of an offense involving moral turpitude to be stricken from the roll of the members of the bar required permanent disbarment); *People v Buckles,* 167 Colo 64; 453 P2d 404 (1969) (the statute providing that one shall be disqualified from practicing law if convicted of a felony requires permanent disbarment); *Office of Disciplinary Counsel v Klunk,* 17 Ohio St 3d 43; 476 NE2d 1051 (1985).

tions in determining whether a disbarred attorney should be recommended to the position of public trust that is held by members of the Michigan State Bar. Moreover, an attorney may be denied readmission on the grounds that sufficient time has not passed to determine the present fitness of the applicant for readmission. Such a denial should not be deemed a permanent disbarment. The order of the Attorney Discipline Board is vacated and the matter remanded to the Attorney Discipline Board for consideration in light of this opinion.

BRICKLEY, RILEY, GRIFFIN, and MALLETT, JJ., concurred with BOYLE, J.

CAVANAGH, C.J. (*concurring in part and dissenting in part*). I concur with Justice BOYLE's analysis in this case. She has correctly stated the factors which should and do govern the determination whether a disbarred attorney should be readmitted to the profession in light of past misconduct and present rehabilitation, and she has persuasively analyzed how those factors should and do interact in the general sense.

With regard to the standard of review, I would add only that this Court's precedents have been somewhat vague about the degree of deference that should be accorded, and to which body it should be accorded, when the Attorney Discipline Board happens to reverse a finding or conclusion of a hearing panel. We cannot apply the deferential "proper evidentiary support on the whole record" standard to the decisions of *both* bodies in that event, because it may well be that both decisions (even though contradictory) are reasonable and supported by the evidence. I think our only recourse where the board and the panel

disagree is to exercise somewhat greater scrutiny of the board's decision, in order to ascertain whether the board itself properly accorded the panel all due deference.

I do not believe the board did so in this case. While the board purported to follow the correct standard of review, it appears to me that the board, in fact, simply substituted its judgment de novo for that of the panel. I do not see how it can be said that the panel's denial of August's petition lacks proper evidentiary support on the whole record. In light of the factors set forth by Justice BOYLE, there is plainly ample evidence on this record from which the panel majority could reasonably conclude, as it did, that August does not, at this time, qualify for reinstatement under MCR 9.123(B)(7).

While Justice BOYLE would take the entirely reasonable course of remanding this case to the board for reconsideration in light of her analysis, I believe the result of that analysis on the facts of this case is sufficiently clear that I would prefer to simply reverse the board's decision and reinstate the hearing panel's denial of August's petition for reinstatement. Given the gravity of August's prior criminal misconduct striking at the heart of the fair administration of justice, as weighed against his subsequent rehabilitation, I do not believe he can safely be recommended at this time to the people of Michigan as a person fit to reassume the singular trust and privilege of practicing law.

Given that a majority of this Court is not disposed to do more than remand this case to the board for reconsideration, however, I concur with Justice BOYLE's analysis as the appropriate standard to guide the board's reconsideration.

LEVIN, J. (*dissenting*). I would affirm the order of

the Attorney Discipline Board reinstating Irving
A. August to the practice of law.

I

The Michigan Court Rules[1] provide that a law-

---

[1] MCR 9.123 provides:

(A) Suspension, 119 Days or Less. An attorney whose license
has been suspended for 119 days or less is automatically
reinstated by filing with the Supreme Court clerk and the
administrator an affidavit showing that the attorney has fully
complied with the terms and conditions of the suspension
order. A false statement contained in the affidavit is ground for
disbarment.

(B) Revocation or Suspension More Than 119 Days. An attor-
ney whose license to practice law has been revoked or sus-
pended for more than 119 days is not eligible for reinstatement
until the attorney has petitioned for reinstatement under MCR
9.124 and has established by clear and convincing evidence
that:

(1) he or she desires in good faith to be restored to the
privilege of practicing law in Michigan;

(2) the term of the suspension ordered has elapsed or 5 years
have elapsed since revocation of the license;

(3) he or she has not practiced or attempted to practice law
contrary to the requirement of his or her suspension or revoca-
tion;

(4) he or she has complied fully with the order of discipline;

(5) his or her conduct since the order of discipline has been
exemplary and above reproach;

(6) he or she has a proper understanding of and attitude
toward the standards that are imposed on members of the bar
and will conduct himself or herself in conformity with those
standards;

(7) he or she can safely be recommended to the public, the
courts, and the legal profession as a person fit to be consulted
by others and to represent them and otherwise act in matters
of trust and confidence, and in general to aid in the administra-
tion of justice as a member of the bar and as an officer of the
court;

(8) he or she is in compliance with the requirements of
subrule (C), if applicable; and

(9) he or she has reimbursed the client security fund of the
State Bar of Michigan or has agreed to an arrangement satis-
factory to the fund to reimburse the fund for any money paid
from the fund as a result of his or her conduct. Failure to fully
reimburse as agreed is ground for revocation of a reinstate-
ment.

yer who has been suspended for more than 119 days or who has been disbarred may be reinstated by the Attorney Discipline Board if, among other criteria, the board concludes that

—the lawyer's conduct, since the order of discipline was entered, "has been exemplary and above reproach" (MCR 9.123[B][5]), and

—the lawyer has a "proper understanding of and attitude toward" the "standards" imposed on members of the bar (MCR 9.123[B][6]), and

—the lawyer can *safely be recommended* to the public, the courts and the legal profession "as a person fit to be consulted by others and to represent them and otherwise act in matters of trust and confidence, and in general to aid in the administration of justice as a member of the bar and as an officer of the court." MCR 9.123(B)(7).

The hearing panel declined to reinstate August. The chairman of the hearing panel dissented and filed findings that were adopted by the other two members of the hearing panel with the exception of the findings relating to the criterion set forth in clause 7.

All three members of the hearing panel, by adopting the dissenting panel member's findings of fact, agreed, however, that August met the clauses 5 and 6 criteria:

—August's conduct since the order of discipline was entered had "been exemplary and above reproach" and

—August had a proper understanding of and

(C) Reinstatement After Three Years. An attorney who, as a result of disciplinary proceedings, resigns, is disbarred, or is suspended for any period of time, and who does not practice law for 3 years or more, whether as the result of the period of discipline or voluntarily, must be recertified by the Board of Law Examiners before the attorney may be reinstated to the practice of law.

attitude toward and *would conduct himself in conformity with the standards* imposed on members of the profession if he were to be reinstated.

On appeal, the Attorney Discipline Board ordered reinstatement. The sole dissenter at the Attorney Discipline Board did not contend that August did not meet the clause 5 or 6 criteria.

The majority of the hearing panel and the dissenter at the Attorney Discipline Board nevertheless concluded that August could not be safely recommended to the public, the courts, and the legal profession because, having in mind the seriousness of the offense committed by August, they were not, as stated by the hearing panel majority, convinced that his "subsequent conduct, no matter how exemplary, has sufficiently ameliorated the taint placed upon the legal profession, by his commission of the crimes in question, to the extent that he could now be safely recommended as a person of trust. To do so, would only further erode an already diminishing public confidence in the legal system."

The dissenter in the Attorney Discipline Board, noting that her colleagues on the Attorney Discipline Board "acknowledge that the petitioner's conduct which led to his conviction was particularly reprehensible," expressed her agreement with the majority of the hearing panel "that reinstatement in this case will inevitably erode public confidence in the legal system and that that consideration was relevant to the finding that the petitioner cannot be safely recommended to the public as a person fit to act in matters of trust and confidence."

The question posed by the court rule is whether August will, if reinstated, conduct himself in accordance with the standards imposed on the profession (clause 6) and can safely be recommended

to the public, the courts and the legal profession (clause 7). If the Attorney Discipline Board concludes, as it has, on the basis of adequate evidence, which there is, that he will so conduct himself, and that he can be so safely recommended, it is quite beside the point that his misconduct was an embarrassment to the profession or, even, that his reinstatement would be an embarrassment to the profession because of adverse reaction by persons who do not wish to see him reinstated, who might raise a clamor resulting in public dissatisfaction with his reinstatement.

Since 1985, only former Judge James Del Rio has been denied reinstatement. Seventy lawyers have been reinstated, including lawyers who have embezzled and misappropriated their clients' money, and who have lied and cheated.

II

This Court entered an order allowing the State Bar of Michigan to file a brief amicus curiae.[2] In its moving papers, the State Bar said that it has not taken a position on the applicability of the standards to August's specific case and does not propose to do so. It seeks rather a declaration that the nature of the underlying misconduct is properly considered in the course of a reinstatement proceeding, and to have this matter remanded to the Attorney Discipline Board for further consideration in light of such a declaration by this Court.

I agree with the State Bar when it asserts:

—The requisite showing of rehabilitation can by definition only be measured in relation to the nature and seriousness of the original misconduct. Hearing panels of the Attorney Discipline Board

[2] 437 Mich 1202 (1990).

cannot determine how far along the road to reha-
bilitation the petitioner has come without refer-
ence to a starting point.

—MCR 9.123 must be interpreted in the context
of other court rules relating to license removal
and reinstatement. Those rules provide further
evidence that the original misconduct must be
considered in a reinstatement proceeding.

—MCR 9.123 must be understood to encompass
consideration of the original misconduct when a
disbarred lawyer seeks reinstatement.

—A petitioner's fitness to be reinstated to prac-
tice cannot be determined without consideration of
the nature and circumstances of the misconduct
resulting in the discipline.

—When considering reinstatement of a lawyer
who converted and misappropriated client funds,
the evidence of present character must be consid-
ered in light of the moral shortcomings that re-
sulted in the discipline, *Tardiff v State Bar* [27 Cal
3d 395; 165 Cal Rptr 829; 612 P2d 919 (1980)].

—Like fitness, rehabilitation must be viewed
from a reference point, i.e., rehabilitation from
what, of what type, nature and extent.

—Without considering the nature of the miscon-
duct, the Attorney Discipline Board has no refer-
ence point from which to relate "fitness" and
"rehabilitation" to the standards of trustworthi-
ness and confidence required by MCR 9.123.

I disagree with the following statement by the
State Bar:

An evaluation of Petitioner/Appellee's fitness

and rehabilitation must take into account the impact the nature of his misconduct will have on the administration of justice, e.g. whether judges, counsel, and court employees, knowing of the conduct which led to disbarment, will treat Petitioner/Appellee so differently to avoid any suspicion that Petitioner/Appellee's clients and their interests may be disadvantaged.

The question, under the court rule, is whether August will conduct himself properly, and whether he can safely be recommended to the public, the courts, and the legal profession. If he can be safely recommended, the Attorney Discipline Board is authorized to reinstate him, and judges, lawyers, and court employees will and should accept that determination.

I also disagree with the following statement of the State Bar:

Similarly, the protection of the public and the courts cannot be assured without review of the nature and seriousness of the misconduct giving rise to the discipline, and whether in light of the gravity of those acts the integrity of any judicial proceeding in which the petitioner if reinstated might participate is likely to be brought into question.

The record establishes clearly and convincingly that August's conduct since he was disbarred has been exemplary and above reproach, and that he will bend over backwards to avoid even the appearance of impropriety were he to be reinstated. August states that he has no intention of practicing in the courts for the present. His reinstate-

ment could, for an appropriate period of time, be so conditioned.[3]

The Grievance Administrator did not claim, or seek to establish before the hearing panel, that judges, counsel, and court employees would treat August differently, or that the integrity of judicial proceedings in which he was involved is "likely" to be brought into question. No witness was offered by the Grievance Administrator to support such a claim, and thus there is nothing in the record that would justify denying reinstatement on this basis.

The Attorney Discipline Board considered the seriousness of August's prior misconduct when it adopted by reference, with one exception, the findings of the hearing panel dissenter. Those findings reflect that the seriousness of August's prior misconduct was considered in determining whether he could be safely recommended. The findings state that "the panel is well aware of the seriousness of the acts which led" to August's conviction and revocation of his license to practice law. The majority in the Attorney Discipline Board acknowledged that August's conduct was particularly "reprehensible."

### III

The Attorney Discipline Board's conclusion that the seriousness of the misconduct did not justify denial of reinstatement has proper evidentiary support on the whole record. This Court has ruled that the standard of review to be applied by this

---

[3] MCR 9.106(2) permits suspension of a license for a specified term "with such additional conditions relevant to the established misconduct as a hearing panel, the board, or the Supreme Court may impose . . . ."

MCR 9.121(C)(3) permits entry of a probation order under circumstances requiring the respondent to practice law only under the direct supervision of other attorneys.

Court when reviewing disciplinary decisions is "whether, upon the whole record, there is proper evidentiary support for the findings of the State Bar Grievance Board."[4]

I agree with the majority that this Court reviews the decision of the Attorney Discipline Board, not the decision of a hearing panel. While there are decisions of this Court that refer to the adequacy of the evidentiary support for findings of a hearing panel, no decision of this Court indicates, let alone holds, that this Court reviews the hearing panel's decision. As set forth in *Del Rio,* this Court reviews the "findings of the State Bar Grievance Board," now the Attorney Discipline Board. To be sure, frequently those findings are the findings of the hearing panel which the Attorney Discipline Board has adopted as its own.

The court rules provide that the Attorney Discipline Board may, on review of the hearing panel's decision, "affirm, amend, reverse, or nullify the order of the hearing panel in whole or in part or order other discipline."[5]

In *In re Daggs,* 411 Mich 304, 318; 307 NW2d 666 (1981), this Court affirmed the decision of the Attorney Discipline Board that modified the discipline imposed by a hearing panel. The administra-

---

[4] *State Bar Grievance Administrator v Del Rio,* 407 Mich 336, 349; 285 NW2d 277 (1979).

See also *State Bar Grievance Administrator v Kopp,* 402 Mich 74; 259 NW2d 559 (1977), a per curiam opinion in which this Court stated the same standard of review; and *State Bar Grievance Administrator v Estes,* 390 Mich 585; 212 NW2d 903 (1973), where this Court opted to retain this standard of review, adopted by case law before the adoption of the present disciplinary rules.

[5] MCR 9.118(D).

It is noteworthy that if the Attorney Discipline Board believes "additional testimony should be taken, it may refer the case to a hearing panel or a master." MCR 9.118(C)(2). The Attorney Discipline Board may thus bypass the first hearing panel, and refer the case to another panel or a master when it believes that additional testimony should be taken.

tor argued in this Court "that the board's action is so contrary to the evidence and findings it amounts to an abuse of discretion." The administrator contended "that abuse of discretion should be the appropriate standard and that the consequence of the existing standard is exemplified by the instant case where the board substituted its judgment for that of the panel." *Id.* at 319. This Court responded:

> [A]n abuse of discretion standard would operate to prevent the board from effectively carrying out its overview function of continuity and consistency in discipline imposed. [Citation omitted.] Hearing panels meet infrequently and are exposed to a relatively small number of discipline situations.[6] [*Id.* at 319-320.]

IV

The Grievance Administrator relies on cases from other jurisdictions, including jurisdictions where disbarment may be permanent. It appears that six states[7] provide for some form of permanent disbarment:

---

[6] In *State Bar Grievance Administrator v Williams,* 394 Mich 5, 15; 228 NW2d 222 (1975), aff'd after remand 396 Mich 166; 240 NW2d 246 (1976), this Court affirmed the board's modification of panel orders of discipline from reprimand and three years suspension to disbarment, after the board provided a statement of reasons therefor. This Court explained that "[t]he Board may also use its review power to adjust disparities arising out of the discipline imposed by individual hearing panels."

In reviewing the panel findings, the board also reversed some of the findings of fact and affirmed others. This action was affirmed by this Court.

[7] In North Dakota (*In re Kraemer,* 411 NW2d 71, 73 [ND, 1987]), and Louisiana (*Louisiana State Bar Ass'n v Krasnoff,* 488 So 2d 1002 [La, 1986], 502 So 2d 1018 [La, 1987], and 515 So 2d 780 [La, 1987]), the grievance authorities may bring a second or third disbarment petition on the basis of conduct not charged the first time. Thus, while they do not have permanent disbarment they may save a count or two for a later proceeding.

—Ohio: by a court rule.[8]

—District of Columbia: by statute and judicial interpretation that disbarment means the lawyer cannot be reinstated.[9]

—Florida: by court rule a disbarment is for five years or longer as the court determines; in at least one case the court made the disbarment permanent.[10]

—Kansas: by judicial decision, and now by court rule, a disbarment may be made permanent.[11]

—New Jersey: essentially by custom, disbarment

---

[8] (7) Manner of Discipline. Any Justice, judge or attorney found guilty of misconduct shall be disciplined as follows: (a) a permanent disbarment from the practice of law, or, (b) suspension for an indefinite period from the practice of law subject only to reinstatement as hereinafter provided, or, (c) suspension for a period of six (6) months to two (2) years from the practice of law . . . .

(8) Effect of Discipline; Enhancement. (A) *A person disbarred* or a person who has voluntarily surrendered his license to practice *shall never thereafter be readmitted to the practice of law in this State.* [Emphasis added. Governing Rule V of the Supreme Court Rules for the Government of the Bar of Ohio.]

See *Akron Bar Ass'n v Thorpe,* 23 Ohio St 3d 210; 492 NE2d 162 (1986), *Office of Disciplinary Counsel v Hughes,* 17 Ohio St 3d 210; 478 NE2d 796 (1985), and *Office of Disciplinary Counsel v Klunk,* 17 Ohio St 3d 43; 476 NE2d 1051 (1985).

[9] By court rule, the District of Columbia provides for reinstatement after five years in an ordinary disbarment. DC Bar Rules, R XI, § 16(a). By statute, the District of Columbia provides for disbarment following a conviction of crime involving moral turpitude. DC Code, § 11-2503(a).

The statute has been construed to mandate permanent disbarment without the possibility of reinstatement. *In re Colson,* 412 A2d 1160 (DC App, 1979); *In re Kerr,* 424 A2d 94 (DC App, 1980).

[10] Florida Rules Regulating the Florida Bar discipline provide for disbarment for five years or such longer period as the Court shall determine. Florida also provides for permanent disbarment by consent. Rule 3-7.12. See *Florida Bar v Winter,* 549 So 2d 188 (Fla, 1989).

[11] Supreme Court Rule 219 permits a disbarred attorney to petition for reinstatement after five years. The five-year disbarment period may, however, be extended at the discretion of the Supreme Court.

See *In re Russo,* 244 Kan 3; 765 P2d 166 (1988); *State v Russo,* 230 Kan 5; 630 P2d 711 (1981).

See also *In re Brown,* 166 W Va 226; 273 SE2d 567 (1980).

always has meant permanent disbarment, there
being only three instances, according to the New
Jersey Supreme Court, of reinstatement of a dis-
barred lawyer in the last one hundred years.[12]

—North Carolina: by court rule with the consent
of the lawyer involved; this apparently is done in
cases where the lawyer can thereby avoid criminal
prosecution.[13]

In contrast with Ohio, the Michigan rule does
not provide for permanent disbarment; it provides
for reinstatement of a disbarred lawyer after five
years.

In contrast with the District of Columbia, the
Michigan rule has not been judicially construed to
mean that the disbarred lawyer cannot be re-
instated—countless disbarred lawyers have been
reinstated in Michigan.

In contrast with Florida, neither the Attorney
Discipline Board nor this Court made August's
disbarment permanent.

In contrast with Kansas, the only state that by
judicial decision, apart from a court rule, decides
to make disbarment permanent, Michigan has
provided the criteria for reinstatement—Kansas
had not.

In contrast with New Jersey, the custom or
practice in Michigan has not been to make disbar-
ment permanent.

It does not appear that any court has ruled that

[12] New Jersey Court Rules provide for disbarment by consent which
is also permanent. NJ Ct Rule 1:20-8(a).

Although the New Jersey Supreme Court Rules do not provide for
any disciplinary sanctions other than disbarment by consent, the
Supreme Court has the authority to discipline attorneys as needed.
NJ Const, art 6, § 3. And when disbarment is the imposed sanction, it
is almost always permanent. *In re Wilson,* 81 NJ 451; 409 A2d 1153
(1979). See also *In re Tumini,* 95 NJ 18; 468 A2d 707 (1983).

[13] Rules of the North Carolina State Bar, "Surrender of License
While Proceeding Pending," art IX, § 17(2)(b). See *Vann, III v North
Carolina State Bar,* 339 SE2d 95 (NC App, 1986).

a lawyer may not be reinstated in a state where, as in Michigan, criteria for reinstatement have been enumerated by the court, and the lawyer has been found to have complied with those criteria.

V

It is noteworthy that the ABA reinstatement criterion, 25E(4),[14] providing that the lawyer should recognize the wrongfulness and seriousness of *the misconduct for which the lawyer was suspended or disbarred,* does not require that the lawyer acknowledge his guilt, but only that he recognize the wrongfulness and seriousness of the misconduct for which he was suspended or disbarred.

The 1986 ABA Standards for Imposing Lawyer Sanctions in effect recognize that disbarment is not permanent unless so provided in the jurisdiction.[15]

The 1989 ABA Model Rules for Lawyer Disciplinary Enforcement do not provide for permanent disbarment.[16] The 1989 Model Rules provide for

---

[14] See n 18.

[15]  2.2 *Disbarment*

Disbarment terminates the individual's status as a lawyer. Where disbarment is not permanent, procedures should be established for a lawyer who has been disbarred to apply for readmission, provided that:

(1) no application should be considered for five years from the effective date of disbarment; and

(2) the petitioner must show by clear and convincing evidence:

(a) successful completion of the bar examination,

(b) compliance with all applicable discipline or disability orders or rules; and

(c) rehabilitation and fitness to practice law.

[16]  RULE 10. SANCTIONS.

A. Types of Sanctions. Misconduct shall be grounds for one or more of the following sanctions:

(1) Disbarment by the court.

reinstatement of a disbarred lawyer after five years.[17] The criteria for reinstatement are set forth in Rule 25E.[18] The Model Rules contemplate that

---

(2) Suspension by the court for an appropriate fixed period of time not in excess of three years.

(3) Probation . . . .

(4) Reprimand by the court or the board. . . .

(5) Admonition by disciplinary counsel . . . .

[17] RULE 25. REINSTATEMENT AFTER SUSPENSION FOR MORE THAN SIX MONTHS AND READMISSION.

A. Generally. A lawyer suspended for more than six months or a disbarred lawyer shall be reinstated or readmitted only upon order of the court. No lawyer may petition for reinstatement until [six months before] the period of suspension has expired. No lawyer may petition for readmission until [five] years after the effective date of disbarment. . . .

[18] Rule 25. E. Criteria for Reinstatement and Readmission. A lawyer may be reinstated or readmitted only if the lawyer meets each of the following criteria, or, if not, presents good and sufficient reason why the lawyer should nevertheless be reinstated or readmitted:

(1) The lawyer has fully complied with the terms and conditions of all prior disciplinary orders except to the extent that they are abated under Rule 26.

(2) The lawyer has not engaged nor attempted to engage in the unauthorized practice of law during the period of suspension or disbarment.

(3) If the lawyer was suffering under a physical or mental disability or infirmity at the time of suspension or disbarment, including alcohol or other drug abuse, the disability or infirmity has been removed. Where alcohol or other drug abuse was a causative factor in the lawyer's misconduct, the lawyer shall not be reinstated or readmitted unless:

(a) the lawyer has pursued appropriate rehabilitative treatment;

(b) the lawyer has abstained from the use of alcohol or other drugs for at least [one year]; and

(c) the lawyer is likely to continue to abstain from alcohol or other drugs.

(4) The lawyer recognizes the wrongfulness and seriousness of the misconduct for which the lawyer was suspended or disbarred.

(5) The lawyer has not engaged in any other professional misconduct since suspension or disbarment.

(6) Notwithstanding the conduct for which the lawyer was disciplined, the lawyer has the requisite honesty and integrity to practice law.

reinstatement may be on conditions.[19]

(7) The lawyer has kept informed about recent developments in the law and is competent to practice.

[19] Rule 25. I. Conditions of Reinstatement or Readmission. The court may impose conditions on a lawyer's reinstatement or readmission. The conditions shall be imposed in cases where the lawyer has met the burden of proof justifying reinstatement or readmission, but the court reasonably believes that further precautions should be taken to insure that the public will be protected upon the lawyer's return to practice.

The court may impose any conditions that are reasonably related to the grounds for the lawyer's original suspension or disbarment, or to evidence presented at the hearing regarding the lawyer's failure to meet the criteria for reinstatement or readmission. The conditions may include any of the following: passing the bar examination as a condition to readmission following disbarment; limitation upon practice (to one area of law or through association with an experienced supervising lawyer); participation in continuing legal education courses; monitoring of the lawyer's practice (for compliance with trust account rules, accounting procedures, or office management procedures); abstention from the use of drugs or alcohol; active participation in Alcoholics Anonymous or other alcohol or drug rehabilitation program; monitoring of the lawyer's compliance with any other orders (such as abstinence from alcohol or drugs, or participation in alcohol or drug rehabilitation programs). If the monitoring lawyer determines that the reinstated or readmitted lawyer's compliance with any condition of reinstatement or readmission is unsatisfactory and that there exists a potential for harm to the public, the monitoring lawyer shall notify the court and, where necessary to protect the public, the lawyer may be suspended from practice under Rule 20(B).